# Charles B. Calvert and George H. Calvert, *vs.* Charles H. Carter.

Arbitration bonds recited that the complainant, in right of his wife, claimed to be entitled to certain portions of the estates "of the *father*, aunt and other relatives and ancestors," of his wife's mother, which had come to the hands of the defendant as the legal representative of his father, and that the parties had mutually agreed to refer to arbitrators, "all the *differences* between and among them, and *all said* claims as aforesaid, in or-

10     v.18

Calvert vs. Carter.

der to avoid all and every litigation in court among members of the same family." HELD:

1st. That these bonds might, without violating any sound rule of construction, be understood as submitting to the arbitrators both the *paternal* and *maternal* successions.

2nd. But as *evidence* merely, they cannot have the conclusive effect of an admission by the parties, that a previous settlement of the "*paternal succession*" made years before, was not intended, at the time, to be final, or of countervailing other evidence in the cause, conclusively establishing the finality of that settlement.

Where an award is declared void, the agreement of submission or arbitration bond, as a binding obligation falls with it.

The action of the court below on an application for leave to file a supplemental answer, depends upon its discretion, and cannot be assigned as error or reviewed on appeal.

The Act of 1854, ch. 230, merely enlarges the *time* within which amendments may be made, but they are still to be made on application to the court, which must judge of the propriety of the proposed amendment, and no appeal lies from its action in such cases.

The propriety of allowing a supplemental answer to be filed, depends upon its avowed objects and purposes, as stated in the *petition for leave* to file it, and not upon other and distinct matters contained in the answer itself, and not referred to in the petition.

Where a petition for leave to file a supplemental answer, avowed the single purpose to be, to surcharge and falsify a settlement, which, as the court had decided, was final and could not be disturbed, the refusal of the application was correct.

The answers to a bill for an account of a fund called the "*maternal succession*," relied upon an award as a defence, and admitted the ascertainment made by the arbitrators to be correct. One of the arbitrators was examined on the part of one the defendants, and was asked to state *what sum* would have been adjudged due, if it had been shown the accounts of the paternal succession had been previously adjusted? This question was put by agreement of counsel, to relieve the parties from the necessity of entering into a full examination of the accounts, if the award should not be held obligatory on the complainant, and the award was subsequently set aside. HELD:

That the answer to this interrogatory, stating that the sum of $12,037.54, would have been adjudged due as of the 12th of January 1838, is competent evidence binding upon all the parties, and conclusive of the amount due on account of the "*maternal succession*."

The usual form of a decree for account, is, to direct the auditor to state the account from the pleadings and proofs in the case, and such further proofs as may be laid before him by the parties.

Calvert *vs.* Carter.

competent for the court, in its discretion, to restrict the auditor to pleadings and proofs *already in the cause;* and unless it clearly appears, material and pertinent evidence, which it was in the power of the party to produce, has been thereby excluded, it is no ground for reversal.

Not good ground for rejecting evidence, admissible *per se*, that it is *cumulative* of other evidence in the cause.

The general rule upon the subject of appropriation of payments, gives to the debtor the right, in the first place, to make the application, and then, upon his omitting so to do, to the creditor.

If a party is indebted in several accounts, and makes payments, and there is no application by the debtor or creditor, the law will appropriate them according to the justice of the case, and will generally apply them most beneficially for the debtor.

In this case, where the party paying was *trustee* of a fund to which the party, to whom the payments were made, was entitled only to the *interest* for life, and his children to the *principal* on his death, it was *held*, that the payments should be applied to the interest.

To a statement of payments a memorandum was appended, signed by the complainant, certifying that he had received of the defendant, executor of George Calvert, the various sums charged in the statement, on account of his late wife's claim against the estate of said George Calvert, *for her portion as one of the representatives of her mother.* HELD:

That the defendant was entitled to the benefit of this memorandum on the question of application of payments, but it ought not to have a *conclusive* effect in determining the application of the payments, because it was made with a view to a settlement by arbitration, and was manifestly erroneous in some particulars.

Exceptions to an auditor's report, filed *before* the action of the court on the report, and before the cause was submitted, are in time, and ought to be considered, though not filed within the time limited in the previous order of ratification *nisi.*

Under a decree requiring the auditor to state the account from the proofs *already in the cause*, no notice of stating the account is necessary; the only object of such notice is to enable the parties to produce proof before the auditor, which, in this case, was not admissible.

An exception to an account, that the exceptant is entitled to credits in addition to those therein allowed him, is too general in its term to gratify the requirement of the Act of 1825, ch. 117, sec. 2.

It is not in the province of the creditor to *tax the costs* in his account, but his having done so, is no ground for reversal in a case where the subject of costs was specially disposed of by the *decree* below, and will be provided for by the decree of this court.

Calvert *vs.* Carter.

APPEALS from the Equity side of the Circuit Court for Prince Georges County.

For a statement of the pleadings, evidence and proceedings in this case, prior to the present appeals, reference must be made to 4 *Md. Ch. Dec.*, 199, and 6 *Md. Rep.*, 135. It is only necessary to re-state here that the bill was filed by the appellee against the appellants, for an account of the effects of the maternal grand-mother of the complainant's deceased wife, who was the daughter of George Calvert, deceased, the father of the appellants. The complainant is tenant for life, and his children, remainder-men, in fee of the fund in question, called in the proceedings the *"maternal succession."* The bill alleges a settlement of the *"paternal succession"* in 1835, 1836. The answers deny this settlement, but plead an award made January 20th, 1848, by Coxe and Bradley as a full defence to the bill, and insist that the amount determined by that award is correct, and is all the defendants are responsible for. The chancellor, (4 *Md. Ch. Rep.*, 199,) decided this award void, because not certain and final; and also, upon all the evidence before him, decided that the arbitrators transcended their powers in disturbing the settlement of the *"paternal succession."* The Court of Appeals, (6 *Md. Rep.*, 135,) upon appeal from the decree or order of the chancellor referring the case to the auditor to state accounts from the pleadings and proofs then in the case, and such further proofs as may be laid before him, in conformity with the chancellor's opinion, and reserving for further consideration all questions not adjudicated by that opinion, affirmed the decree upon the ground that the award was void for uncertainty, and therefore removed from the plaintiff's way in this case, but expressed no opinion upon the other questions decided by the chancellor, and sent the case to the Circuit court for Prince George's county for further proceedings.

When the case reached that court it was referred to the auditor to state an account, in conformity with the opinions of the chancellor and of the Court of Appeals. Two accounts were then stated under direction of the complainant's solicitor, the

one charging the defendants with $13,000, being the medium between $12,000 and $14,000, admitted to be the share of Mrs. Carter, by the letter to her of the defendant, George H. Calvert, dated March 10th, 1840, and the other with $12,037.54, shown to be the share of Mrs. Carter by the answer of Mr. Bradley to the 14th interrogatory on the part of the defendant. To these accounts the defendants filed exceptions, because stated in obedience to the instructions of complainant's solicitor, and without notice to the exceptants; because there is no evidence competent and proper to show what sum, in certain, is chargeable against the exceptants; and because they are entitled to large credits over and above those thereby allowed.

A petition was then filed by the defendants, asking leave to file a supplemental answer for the purpose of surcharging and falsifying the settlement of the *"paternal succession."* This petition was accompanied by a long supplemental answer, and various exhibits relating to that succession and other matters, and it was agreed by the solicitors of the parties, that this petition and answer should be filed, subject to the objection reserved by the complainant, and which he is to be at liberty to make at the final hearing, to have like effect as if it had been made immediately after the filing of the petition, that if, on said hearing, the court should be of opinion that the defendants were not entitled to file a supplemental answer, as proposed, then the court may direct said answer to be taken from the file. The complainant then filed as exhibits the bills, answers and proceedings, in two other causes instituted by him against the defendants and others, and on application of the defendants, a commission was issued under which the handwriting of the complainant on exhibits T.S.A., 1 to 17 inclusive, was proved. T.S.A., 17, is a statement of various payments made by Calvert to Carter, and appended thereto is this memorandum, signed by Carter, and dated July 1st, 1846: "I hereby certify, that I have received from Charles B. Calvert, executor of George Calvert, the various sums of money charged in the above account, on account of the claim of my

late wife, against the estate of the said George Calvert, for her portion, as one of the representatives of her mother, Rosalie E. Calvert." Copies of three deeds were also filed under the commission, which was returned May 10th, 1858.

The claimant filed exceptions to all the testimony taken under this commission, tending to impeach the finality of, or to show errors in, the settlement of the "*paternal succession*," because the nature of that settlement must be ascertained from the written evidence thereof already in the cause, and which cannot be contradicted or impeached under the pleadings; and because that settlement was final; and because such evidence cannot be offered at this stage of the cause. They also excepted to all the evidence, so taken, which tends to show the amount due on account of the "*maternal succession*," because it was offered at too late a stage of the cause, and is inadmissible under the pleadings, and because the amount so due is shown by the answer of Mr. Bradley to the 14th interrogatory of the defendant, Charles B. Calvert, under the commission returned September 7th, 1849, and the said defendant has bound himself to abide by that answer.

The 14th interrogatory to Mr. Bradley, (who was examined on the part of the defendant Charles B. Calvert,) alluded to in these exceptions, is this: "Assuming that the accounts in relation to the '*paternal succession*' were unsettled, and including the same in your award, you have found due from Mr. George Calvert, to the complainant and his children, the sum of $8039.51. State, now, what sum would have been adjudged to be due if it had been shown to you that the accounts relating to the '*paternal succession*' had been previously adjusted? Appended to this interrogatory is this memorandum: "*Mem:*—This last question was put by agreement between the counsel, and to relieve the parties from the necessity of entering into a full examination of the accounts, in the event the award relied on should not be held obligatory on the complainant." The answer of the witness to this interrogatory was, "Under the circumstances stated, there would have

been adjudged to him $12,037.54, as of the 12th of January 1838."

The case having been set down for hearing and argued, the court, (CRAIN, J.,) delivered the following opinion:

"This case has been remanded from the Court of Appeals for further proceedings. The bill was originally filed in the Court of Chancery of Maryland, by the complainant against the defendants, and a very full report of the case will be found in 4 *Md. Ch. Dec.*, 199. It was filed for an account of the moneys and effects of the maternal grandmother of the complainant's deceased wife, who was the daughter of George Calvert, the father of Charles B. Calvert and George H. Calvert.

"Chancellor Johnson, delivered a very able and elaborate opinion, reviewing the whole case on all the facts, and decreeing an account to be taken against the defendants. From his opinion and decree an appeal was taken to the Court of Appeals of Maryland, and his opinion and decree affirmed, and the case sent to this court. As the Court of Appeals did not think proper to express any dissent to the opinion of the chancellor, or dissatisfaction with his views in the case, judicial etiquette requires me to treat it as binding on this court. Indeed, I find the law, as expounded by Chancellor Bland, imperative on this court. In the case of *McDonald vs. Strike*, in 1 *Bland* 67, the chancellor says: 'Hence, whatever has been heretofore determined in this cause, must now be considered as finally settled, and in every respect unalterable, except by bill of review, appeal, or in the regular course of law.' By adverting to the able opinion of Chancellor Johnson, we shall find that he decided that the award which was interposed by the defendants as a complete defence to the demand for an account of the maternal estate, was null and void, and consequently *removed it from the way of the plaintiff in this case*, not merely on the technical ground that it was not certain and final, but on the broad ground that the arbitrators had exceeded their authority by ravelling into and

investigating, what is called in this case, and in these proceedings, the *'paternal succession.'* He uses this emphatic language: 'Whatever may be said of several of the questions raised and discussed by the counsel on both sides, in this case, with so .much ability, there can, I think, be no reasonable doubt that the *settlement* between the elder Mr. Calvert and *his daughters,* Mrs. Carter and Mrs. Stuart, made in the year 1836, was *intended to be,* and *was considered,* on all hands, as a full and final adjustment of all the claims of the *daughters* against their FATHER, for and *in respect of moneys* and property which had come to *his hands* from the *executors of* their *maternal grandfather.* The *evidence* on this point, both documentary and oral, is *too conclusive* to be susceptible of *misapprehension,* and I am quite satisfied that when, in 1846, it was agreed to refer to Messrs. Coxe and Bradly certain matters, then in difference between Messrs. Carter and Stuart, and Mr. Charles B. Calvert as the legal representative of his father, George Calvert, then deceased, it was not the understanding of the *two first named gentlemen,* that the settlement of 1836 was *one* of the subjects to be submitted to the arbitrators. And in truth the evidence shows very clearly, that *Mr. Charles B. Calvert, himself,* regarded the *settlement in question final,* until the execution *of the arbitration bond.'*

"Here is the opinion of the chancellor, (in whose place I am now substituted,) that the settlement of 1836, between Mr. George Calvert and his daughters, was a final settlement of the paternal estate, regarded as such, and acquiesced in by all the parties interested, so that he was clearly of opinion, that the arbitrators exceeded their authority, and that the settlement of 1836 should not be disturbed or re-investigated in this case. As I do not design to review, revise or reverse the chancellor's opinion, which I consider binding on me, I shall not pass any order which can conflict with his opinion or views, so that all the subsequent proceedings in this case, must be in conformity to his opinion or views as expressed after patiently investigating the facts, and maturely and deliberately considering

Calvert *vs.* Carter.

them. Since the case has been remanded to this court, the auditor has made a report under the decree and order of Chancellor Johnson, exhibiting the amount of complainant's claim. Exceptions were filed by the defendants to the report, and the defendants, Charles B. Calvert and George H. Calvert, also filed a petition to this court, asking to be allowed to file a supplemental answer, and accompanied it with a supplemental answer, which, by consent, was marked filed, subject to an agreement which was entered into by the solicitors of the respective parties, that, at the hearing of the case, the complainant should be at liberty to object to the supplemental answer, and move to have it removed from the files of this court. This case was submitted at the last term of this court, and argued with great ability by the learned solicitors engaged in the case, and the several important and interesting questions, as it regards chancery practice, are now to be decided by this court so far as this case is concerned.

"In addition to the case now under consideration, the complainant and his children have filed two other bills of complaint, against the defendant, Charles B. Calvert, and others, certified copies of which, with all the proceedings, have been filed in this case, and, at the hearing of this cause, a motion was made to consolidate them. This motion was opposed by the defendants, and after due consideration I have determined to overrule the motion. If this court has the power, I doubt the expediency, and in the view which I have taken of the application of the payments made by Charles B. Calvert to Mr. Carter, a consolidation of the cases would not operate to the benefit and advantage of the complainant.

"The next question for my decision is, the petition on the part of the defendants to file a supplemental answer, and in connection with it, the application on the part of complainant to have the supplemental answer, filed as before stated, removed from the files of the court.

"It was urged on the consideration of the court, that it was in the discretion of the court to admit the amended answer.

11    v.18

There is no doubt that applications of this kind address themselves to the discretion of the court, but it will be the exercise of a sound and wise discretion, regulated by the rules and principles recognized as applicable to chancery pleadings. It must be conceded that a special case must be shown before the court will allow a defendant to amend his answer. It must affirmatively appear that new matter has come to his knowledge since the filing of his answer, or that there was some surprise or mistake in the first answer, and the late Chancellor Johnson has said, the unwillingness of the courts to permit a defendant to change or add to the grounds of the defence set up in the first answer, is increased, when the application is made after the opinion of the chancellor has been delivered in the case; and the Court of. Appeals, in reviewing a case of a rejected application to file a supplemental answer, have expressed themselves very clearly, as will be seen by referring to the case of *Thomas vs. Dent*, 1 *Md. Rep.*, 323, where Judge Le Grand in delivering the opinion of the court, says: 'It is not the right of a party to file an amended answer. Before it can be done the leave of the court must be obtained, and this is *never granted* except under peculiar circumstances, verified by affidavit. The rule upon this subject is, says Chancellor Bland: 'That the defendant must move to put in a supplemental answer and accompany the motion with an affidavit, in which he must swear that when he put in his answer, he did not know the circumstances upon which he applies, or any other circumstances upon which he ought to have stated the fact otherwise, or that when he swore to his original answer, he meant to swear in the sense in which he now desires to be at liberty to swear.' And in 2 *Daniel's Ch. Practice*, 914, we find it stated, that although the court will, in case of mistake or other cause of that description, permit a defendant to correct his answer by a supplemental answer, it always does so with difficulty when an addition is to be put upon the record prejudicial to the plaintiff, though it will be inclined to yield to the application if the object is to remove out of the

plaintiff's way the effect of a denial, or to give him the benefit of a material admission: and it is to be observed that the court will not allow a supplemental answer to be filed, unless on new matter, nor unless a sufficient reason appears for not inserting it in the original answer.' See, also, 10 *Ves.*, 401; 1 *Ves. & Beam.*, 149; 4 *Sim.*, 54. Let us test this petition and supplemental answer by these principles enunciated by our chancellors, and approved by the highest legal tribunal in the State, and determine whether this court will be justified in permitting the supplemental answer to remain on the files of the court.

"I have carefully examined all the facts in the case, and I am forced to conclude that every fact and averment, stated in the supplemental answer, was known to the defendant when the original answers were filed. Several letters were read by the defendant's solicitor, signed by Mr. Carter, the complainant, but these letters, from their date, must have been in his possession when he filed his original answer, and some of them were already in the case, but I do not deem them of such importance as to induce me to modify the views of Chancellor Johnson.

"I am not at liberty to disregard the opinion of Chancellor Johnson, and I should not be acting in conformity to it, if I were to consent that the defendants were at liberty to surcharge and falsify a settlement made in 1836, which, Chancellor Johnson says: 'was intended to be, and was considered on all hands as, a full and final adjustment of all the claims of the daughters against their father, for and in respect of moneys and property which had come to his hands from the executors of their maternal grandfather, and in truth,' (he adds,) 'the evidence shows very clearly, that Mr. Charles B. Calvert himself regarded the settlement in question final.' And after this opinion of the chancellor, formed from a thorough examination of the testimony, both documentary and oral, and after such a lapse of time, and the death of Mr. Calvert and his daughter, I do not feel disposed to disturb the settlement

made between them; I therefore reject the application and direct the supplemental answer to be removed from the files of this court.

"The exceptions to the auditor's reports are ruled good and sufficient; it being conceded that they were erroneous. I shall sign an order remanding the case to the auditor to re-state the accounts, and I deem it my duty to instruct him to charge the defendants with the sum of $12,037.54, as of the 12th of January 1838. I think this is a true amount, from an examination of all the evidence in the cause. The admissions of George H. Calvert, one of the trustees, do not make the sum too much, whilst the evidence of Mr. Bradly, taken by the defendant, C. B. Calvert, and produced on behalf of himself and George H. Calvert, says, they found it to be the true amount.

"From the death of Mr. George Calvert, in 1838, till the commencement of this controversy, Mr. Charles B. Calvert made large payments to Mr. Charles H. Carter, without designating how they should be applied, and their just, equitable and proper application are now to be determined by this court. The general rule upon the subject of the appropriation of payments, gives to the debtor, in the first place, the right to make the application, and then, upon his omitting so to do, to the creditor; but if a party is indebted in several accounts, and makes a payment, and there is no application of it by the debtor of creditor, the law will appropriate it according to the justice of the case.

"It is admitted law, that where neither party has made an application of the payments, the law will apply them most beneficially for the debtor; but in the adjustment of the different claims between Messrs. Carter and Calvert, the fact that Mr. Calvert was one of the trustees of the trust-fund belonging to the children of Carter, in which Carter had only a life-estate, must not be overlooked. Mr. Carter was only entitled to the use and enjoyment of the interest of the property and money, and it will not be presumed that Mr. Calvert designed

or intended to permit Mr. Carter to abuse and waste the principal of the trust-fund, so that it will be the duty of the auditor to apply the payments to the liquidation and extinguishment of the interest due on the different indebtedness of Mr. Charles B. Calvert to Mr. Charles H. Carter, at the time the respective payments were made. If he shall find, from the evidence in the cause, that Mr. Charles B. Calvert, by his payments, exceeded the interest due to Mr. Charles H. Carter, the tenant for life, at the time of the payments, he will apply the excess to the credit of this claim, as he has elected in his answer to the other two bills filed against him by Mr. Carter, to apply them to this claim. The complainant has filed and relied on, as evidence in this case, the answer of Charles B. Calvert to two other bills filed against him by Mr. Carter. He admits, in one of his answers, that he does owe to Mr. Carter and his children, the sum of $4083.80, for Mrs. Carter's interest in certain real estate, which he agreed to purchase and take at the valuation of certain gentlemen, with interest from the 17th day of May 1838; and in the other answer, he also admits the annual receipt, after the year 1841, of $60 a year, for dividends received on certain turnpike road stock. A court of chancery, in adjusting this case, is not at liberty to overlook and disregard the relation which the defendant, Charles B. Calvert, stood to the complainant and his children. He was one of the trustees, and the acting one, to preserve the principal of the property and estate of his deceased sister, for the benefit of her children, and only authorized and empowered to pay the interest to Mr. Carter. He held all the property, now the subject of litigation, and was only authorised to pay the interest of it to Mr. Carter, who was entitled to receive it. It must be presumed he knew the amount and value of the estate, and the annually accruing interest thereon, and the payments which he made to Mr. Carter, the tenant for life, was the interest, and not the principal, of the estate. A court of chancery will conclude, that a trustee is acting in good faith, and not abusing and violating his trust. From the evidence in the case, Mr.

Charles B. Calvert, for many years, paid Mr. Charles H. Carter $1000 a year. The legal and equitable presumption is, that he was paying him the interest of the fund, and not the principal, as he had been appointed, in conjunction with Mr. Lee, as trustee, to preserve the estate for the benefit of Mrs. Carter's children. If it shall appear, from all the evidence in the cause, that the annually accruing interest on the different indebtedness of Mr. Calvert to Mr. Carter, amounted to that sum, will this court be justified in permitting an application of the payments to destroy the principal of the estate and leave the interest unpaid? Mr. Charles B. Calvert was the debtor in all the claims, and liable to pay the complainant the annual interest accruing on all. He was justly responsible to pay the tenant for life, the annual interest on all sums due from him to the trust estate, and it would stultify Mr. Carter to make him receive the principal of the estate which was due to his children, and decline to receive the interest which was his.

"It must therefore be admitted that, Mr. Calvert owed Mr. Carter annually, for interest on the purchase of the real estate, $245.02, and received about $60, as will appear by Mr. Calvert's exhibit relating to the stock bill, making $305.62, and charging him with the sum of $12,037.54, the amount which I find due from the maternal succession, and the amount will be a little more than Mr. Calvert was in the habit of paying Mr. Carter, annually, previous to the commencement of this litigation; so that it appears Mr. Charles B. Calvert, by his payments to Mr. Charles H. Carter, intimated the true and real indebtedness from himself to Mr. Carter and his children, and as it corresponds nearly with all the evidence in the cause, I feel convinced it was the intention of Mr. Charles B. Calvert to pay it as the proper and just sum with which he is chargeable.

"It was contended by the solicitor of the defendants, that as Mr. Carter, in some of his receipts, named Mr. Calvert as executor of George Calvert, that therefore the payments should

be exclusively applied to this case.   I cannot give this proposition my sanction.   Mr. Charles B. Calvert, the defendant, had consented to become the trustee of the fund as early as 1842, and was the acting trustee, administering the trust, and by construction and operation of law, all the moneys in his hands due to Mr. Carter and his children, he held as trustee: he could not institute suit against himself, and after such a lapse of time, the presumption of law is, that the fund was in his possession as trustee, and not as executor.

"On the application of the defendants a commission was issued to take testimony, which commission and testimony have been returned, and the complainants have filed excep-tions to the testimony, and I think it my duty, in acting on these exceptions, to express the opinion of the court relative to the applicability of the evidence, and its admissibility, under the present pleadings in the cause, and the view which I have deemed it my duty to take in reference to the rights of the complainant, so that the auditor may not be misled in stating his account.

"As I have excluded the supplemental answer, I rule the exceptions good and sufficient to the deed from George Calvert to Richard H. Stuart for Oatland, and also the deed from George Calvert to George H. Calvert and Thomas Mitchell, being for Spurrier Land, and the deed from Owen Dorsey and Nicholas Dorsey to Rosalie Calvert, as they relate to matters involved in the amended answer.

"T.S.A., Nos. 1, 2, 3, 5, 6, relate to the question of what matters were submitted to the arbitrators, and seem designed also to show that the parties did not, at that time, consider the '*paternal succession*' settled.   As to the first purpose they are irrelevant under the pleadings, as the award is now out of the case.   As to the second purpose, they cannot under the plead-ings be admitted to contradict the deed of Goodwood, and the agreement of reference to Walter Jones, which show that the '*paternal succession*' was settled.

"T.S.A., No. 4, is irrelevant to the case.   Nos. 9, 10, part

of 12, ($238.30,) Nos. 13, 14, 15, 16 and 17 are inadmissible to show further payments to Charles H. Carter, during the period embraced in the statement furnished the arbitrators, marked exhibit C.B.C., No. 4, because the defendant, Charles B. Calvert, says, that said paper contains an account of the moneys paid to the complainant prior and up to the time of its preparation, and I think they are now precluded from showing other payments during that time, in the absence of proof of fraud or mistake. I think No. 10 is also objectionable, as not appearing to have any connection with the case, and it appears to me that No. 13 is included in No 12. Nos. 7, 8, 11, and the remaining part of No. 12, ($500,) are for payments included in C.B.C., No. 4, and therefore only calculated to mislead the auditor, and must be rejected as irrelevant, they being superseded by C.B.C., No. 4.

"I will sign an order referring this case to the auditor, to state an account in conformity to my views as expressed in this opinion. I almost deem it unnecessary to say, that I adhere to the chancellor's opinion in reference to the claim of complainant, to a portion of the damages paid by the railroad company for the right of way through certain lands conveyed by Mr. George Calvert to the railroad company. It was well and aptly said by the chancellor, that Mr. George Calvert could only convey to the railroad company his own interest in the land. This, I think, disposes of the whole case, so far as it has been submitted to me."

A decree or order was then passed, dated May 27th, 1858, rejecting the auditor's accounts then filed, they being admitted by the complainant to be incorrect, directing the supplemental answer, with the exhibits attached thereto, to be taken from the files, rejecting the motion of the complainant for consolidation, and referring the case to the auditor, "with directions to state and report an account or accounts between the parties according to the prayer of the bill, and in conformity with the views expressed in the aforegoing opinion, the said account to be stated from the pleadings and proof now in the cause, and

Calvert *vs.* Carter.

to be reported to this court within thirty days from this date; and all questions not in said opinion or in this order adjudicated, are reserved for further order of this court on the coming in of the report, and rejecting all the testimony taken by the defendants under the commission returned May 10th, 1858." From this decree the defendants appealed; which is the *first* appeal in this case.

On taking this appeal the defendants applied to the court to stay execution of the decree appealed from; until the determination of the appeal, submitting to give satisfactory bond, but this application; for a stay of proceedings, was refused, the court being of opinion that the auditor's report should be made without further delay, the cause having already been pending nearly ten years. The auditor then filed a report and account, (No. 3,) on the 31st of August 1858, and another report and account, (No. 4,) on the 20th of September 1858. The court then, on the 23rd of September 1858, ordered, that these reports and accounts "be finally ratified and confirmed on the first Monday of November next; unless cause to the contrary be shown on or before the 25th day of October next; provided a copy of this order be served on the defendants or their solicitor, on or before the 1st day of October 1858." Service of a copy of this order was admitted by the defendants' solicitor, September 27th, 1858, subject to all exceptions to regularity of order and otherwise, and on the 27th of October 1858, the defendant, Charles B. Calvert, filed exceptions to these reports and accounts:

1st. For that they were stated, prepared and filed without any notice to this exceptant, and without giving him the opportunity for adducing evidence admissible; and taking any part in the settlement of said accounts and reports.

2nd. For that this exceptant is, in these accounts, made liable as executor of George Calvert for payment of $12,037.54, as the amount of the '*maternal succession*,' and for the interest thereon; whereas, there is no proof in the cause to show that this sum, or any part of it, is properly chargeable against

12    v.18

this exceptant as such executor or otherwise, and on the contrary, the same if properly chargeable against any debtor, (which is denied,) ought to have been stated and reported as chargeable to George Calvert, or to his estate.

3rd. For that there is no evidence in the cause to show that George Calvert, at the time of his death, was indebted to the complainant, or his late wife, or children, or trustees, in the sum of $12,037.54, and the assumptions of the auditor in this respect are gratuitous. .

4th. For that the auditor in his said statement, purporting to be an account between this exceptant as executor of George Calvert, and the trust estate of Mrs. Carter, has introduced distinct matters of account between this exceptant individually and the complainant, to wit: for interest on $4083.80, amount due by this exceptant for Mrs. Carter's interest in "Riversdale," and for dividends on stock, &c.

5th. For that in these accounts the auditor has applied payments made by this exceptant, as executor of George Calvert, in part to the discharge of indebtedness of this exceptant, individually, to the complainant, being the exceptionable items referred to in the preceding exception, whereas, all such payments ought to be applied exclusively in payment of any ascertained liability of George Calvert, deceased.

6th. For that this exceptant is entitled to credits in addition to those given him in said accounts.

7th. For that the auditor has improperly charged this exceptant with divers sums for costs, which are not properly chargeable against him in account.

8th. For that the auditor has charged this exceptant with assets as executor of George Calvert, and charged him in that character, when there is no averment in the bill in this respect.

The court, then, on the 6th of November 1858, passed a final decree in the cause, stating that the cause stood "ready for final hearing," ratifying the auditor's reports and accounts Nos. 3 and 4, overruling the exceptions thereto, "as not having been filed within the time limited for that purpose," decreeing

that the sum of $12,037.54 is due and payable as principal to the trustees under the marriage settlement between the complainant and his late wife, and that the further sum of $5455.45, of interest on said first mentioned sum, to the 20th of August 1858, is due and payable to the complainant, and that the payment of these two sums, amounting to $17,492.99, is provided for and secured by the deed of trust of George Calvert, dated November 11th, 1837, and directing the trustees under that deed of trust to proceed forthwith to execute the powers vested in them by the same, for paying and satisfying said sum of $17,492.99, with interest thereon from the 20th of August 1858, and for that purpose to sell immediately the property conveyed to them by that deed, or so much thereof as may be necessary for that end, and to bring into court the proceeds to be paid as provided by this decree; and when so paid the court will give proper directions as to the investment of the principal sum aforesaid, and further decreeing, that the defendants pay the complainants the sum of $381.74, for his costs, as stated in the auditor's said accounts, and his further costs of suit to be taxed by the clerk.

From this decree the defendants also appealed, which is the *second* appeal in this case.

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J.

*Thos. S. Alexander*, for the appellants, argued :

1st. The decree of May 27th, 1858, directs the auditor to state his account from the pleadings and proofs *now* in the cause, and thereby departs from the forms and practice of the court, which secure to the defendant the right of producing before the auditor any evidence relevant to the matter of the account, and disregards equally the chancellor's decree, and the decree of the Court of Appeals, which last, in affirming the decree of the chancellor, by necessary implication declares the right of both parties to produce further evidence before the auditor. 2 *Bland,* 82, *note, Barney vs. Hollins.* 1 *Russell,* 101, 107, *Law vs. Hunter. Alex. Ch. Pr.*, 211.

Calvert *vs.* Carter.

. 2nd. This decree excludes evidence of payments by Calvert to Carter. A part of this evidence is excluded, on the ground that it is corroborative of the original answer of Charles B. Calvert, and of the paper C.B.C. 4, filed therewith, and therefore *calculated to mislead the auditor*, and another part on the ground that it shows payments in addition to those shown by that paper. The court was of opinion that that paper is conclusive on Calvert, as to the extent of his payments, unless mistake is shown, and that T.S.A. 17, in which Carter over his proper signature admits an additional payment, is *no evidence of mistake*. Now C.B.C. 4, was prepared at the instance of the arbitrators, and was laid before them with the assent of Carter, and was used by them. It is so averred in the original answer. It is therefore an admission *in pais*, but cannot conclude us from showing its inaccuracy, and this, it is submitted, is clearly shown by T.S.A. 17, which was, therefore, admissible upon this ground. But again, C.B.C. 4, was made avowedly to show payments on account of the "*maternal succession*," Carter now insists, that they are to be treated as made indifferently on three several accounts, and the court has said they are to be treated as made, first, on account of interest on the claim for the "*maternal succession*," next, on account of interest on the Riversdale purchase, and lastly, on account of dividends received on road stocks. Now if it can be shown that the dividends were accounted for as received, it is quite clear they are not to be again taken out of the money which Calvert paid avowedly on the "*maternal succession*." On this ground, T.S.A. 13 and 15, are admissible. And if it can be shown that other payments were made generally to an amount equivalent to the interest on the Riversdale purchase, and the dividend account, then these payments ought to be allowed in any account into which the charges for interest and dividends are introduced. On this ground, proofs of other payments are admissible. Again, the issue now joined is, whether certain payments shall be imputable exclusively to the "*maternal succession*," or apportioned against all the ac-

counts. Now by T.S.A. 17, Carter confirms in writing the ad-
mission made by him before the arbitrators, that certain pay-
ments were to be credited to the *"maternal succession,"* and
the proofs of other payments evidence selection, and prove that
those admissions were considerately made. It is denied, last-
ly, that a court of equity can exclude parol evidence, which
is admissible *per se,* on the ground that it is cumulative of
other parol evidence, of the sufficiency of which the jury can-
not judge until after the determination of the case.

3rd. This decree, as explained by the court's opinion, directs
that the payments which C.B.C. 4, applies exclusively to the
account of the *"maternal succession,"* shall be applied propor-
tionally to the payment of the interest on that account, interest
on the Riversdale account, and on the dividend account. Now
the court has already read the original answer, to show that
C.B.C. 4, contains a full and accurate statement of payments
made on account of the *"maternal succession,"* and has,
therefore, denied to the appellants the privilege of showing ad-
ditional payments. It is submitted, that the answer thus read
is evidence, equally conclusive of *the purpose* of the payments.
The court has assumed, that the several debts are due by
Charles B. Calvert individually, and that the payments were
made by him out of his individual estate, and that it was his
duty to apply those payments in the manner best calculated to
promote the interest of his trust. In fact the debt on account
of the *"maternal succession,"* was due by George Calvert, de-
ceased, and the payments were made by Charles, as executor
of George, and out of his assets. The fact that the payments
were thus made was admitted by Carter before the arbitrators,
and again in writing by T.S.A. 17, and again are shown so
to have been made by the answers to the Riversdale and
stock bills, which have been introduced into the cause by
Carter, and referred to by the court. It may be true that
those payments, if in excess, of Carter's life-interest in the
fund, were improvidently made, and in the event of an insuf-
ficiency on the part of Carter, Calvert might be made to an-

swer therefor to his *cestui que trusts* in remainder. But this possibility of loss cannot justify the court in directing that the assets of George Calvert's estate, actually applied to the discharge of his debts, shall be applied to the discharge of debts due and owing by Charles B. Calvert personally. And more especially, as the direction is given in a cause instituted by the life-tenant, especially for his own interests, and where the court has the power of protecting the fund out of the future incomes of that life-tenant.

4th. This decree excludes the supplemental answer, and the exhibits filed with and as part of that answer. The broad ground of exclusion is, that it is not shown that the defendants were not aware of the matters of defence, now sought to be introduced at the time of filing their original answers. But the application is made under the Act of 1854, ch. 230, which entitles the party to amend at any time, *so as to bring the merits of the case, in controversy, fairly to trial.* This Act was intended to alter the practice of the court as it was then understood, and it does alter it in two particulars. The motion is now *ex debito,* and is not addressed to the discretion of the court. It is to be allowed, whenever it is necessary to bring the merits of the case fairly to trial. If the facts develop a defence which is not pleaded, it is presumed the defendant would be allowed to amend just as the complainant is allowed to amend his bill, to adapt it to the state of his proofs. The limitations, it is presumed, now are, that the case when amended shall be substantially the same with the case originally pleaded, and that the new answer shall not contradict the original answer in matters of fact. Now in the present case no more is asked than the privilege of developing, in detail, the defences which are foreshadowed in the original answer. And this it is presumed would be admissible under the ancient practice, as by defining the particulars, the extent of the original defence, whilst it remains identical as a case, is circumscribed, in its scope and extent. See 7 *Md. Rep.*, 581, *Berry vs. The Convention of the Episcopal Church.* 6 *Md. Rep.*, 433, *Bowie vs. Stone-*

*street.* 12 *G. & J.*, 398, *Darnal vs. Hill.* It is assumed by the decree and opinion, that the sole object of the supplemental answer was to review the settlement of 1836, which it is supposed was adjudged by the chancellor to be a final settlement; George Calvert and Mrs. Carter intended it to be, and treated it as a final settlement, and therefore, in the face of his express agreement as evidenced by the arbitration bond, and of conduct on his part, which is incapable of two constructions, it is violently assumed, that Carter could not have intended to review that settlement. Now the court errs in supposing that the state of the paternal settlement is the only subject discussed in the supplemental answer. It proposes, likewise, to introduce the materials out of which are to be constructed the accounts of the *"maternal succession."* In other words, to make precisely the discovery which is called for by the bill, and which would have been incorporated into the original answer if the defendants had not supposed the award was conclusive on the subject. If the defence of *an award made,* had been formally pleaded, and if that plea had been overruled, there would have been a *respondeat ouster,* and an answer would have been filed precisely in the terms of this branch of the supplemental answer. Can it be denied then, that this part of the answer is proper to bring the merits of the case fairly to trial? And independent of the answer, and under the decree of the chancellor, affirmed by this court, were not the defendants entitled to show the value of that part of the *"maternal succession,"* which actually came to the hands of George Calvert? By excluding all this documentary evidence, which was filed with their supplemental answer, the defendants were excluded from the exercise of this right. And as to the *"paternal succession:"* the decree of the chancellor, as affirmed by the Court of Appeals, concludes nothing more than the nullity of the award. The account is therefore to be taken from the pleadings and proofs in the cause, and such other proofs as the parties may think fit to produce before the auditor. And the question of the finality of the settlement of 1836, and if not

final, the question of its correctness are by necessary implication reserved for further directions; to be given on the coming in of the auditor's report. It will hardly be contended that those questions are concluded here; and if not concluded here, they were open in the court below, 5 *H. & J.*, 459, *Warfield vs. Warfield.* Hence the court erred in excluding evidence tending to show that; in Carter's opinion, this settlement was not final; and evidence showing errors in that settlement. And as the supplemental answer was in this respect designed as a specification of errors in that settlement, and as expressing the grounds on which it was to be impeached, the court on these grounds erred in directing the answer to be taken from the files. The decree also declares, that the settlement of 1836 was to be final and conclusive. It is so declared because it was so decided by the chancellor. But the court erred in assuming that the opinion expressed by the chancellor concluded the judgment of the present court. The appellants were entitled to expect the independent judgment of the court below on this subject. The court erred further in assuming that the chancellor's opinion, founded on a partial view of the subject, concluded its judgment upon the case as presented by the entire record. And lastly, it is submitted, the court erred because the proofs tendered, and which ought to have been accepted as part of the record, with the proofs antecedently exhibited, 1836 was not accepted as conclusive by the complainant, and demonstrate beyond reasonable cavil, that the settlement of that it is erroneous. The decree assumes that the sum due in respect to the "*maternal succession,*" is $12,037.54, as of the 12th of January 1838. The court erred in assuming that the opinions of the arbitrators; upon the state of the case laid before them, was evidence in this cause, and in assuming that the evidence was taken on the part of George H. Calvert—it was taken on the part of Charles B. Calvert only—and in assuming that it was evidence as between Charles B. Calvert and the infant defendants, and in treating this evidence as, under the circumstances; concluding Charles B. Calvert, more especially

as its obligatory force was repudiated by the complainant in his instructions to the auditor.

As to the decree of the 6th of November 1858, and under the appeal therefrom, it is insisted:

1st. That the interlocutory decree of may 27th, 1858, refer-ring the cause to the auditor, is erroneous, for all the reasons above stated on the appeal from that decree.

2nd. That the cause, not having been submitted by any of the parties, ought not to have been decided by the court.

3rd. That the exceptions to the report having been filed before the action of the court on the report, and before the cause had been submitted, were in time, and ought to have been considered, and the court erred in overruling them without consideration.

4th. That the appellants were entitled to notice from the auditor, and to an opportunity for producing their evidence in relation to the subject of the account.

5th. That there is no evidence in the cause which justified the auditor in assuming that the principal of Mrs. Carter's share of the *"maternal succession,"* was $12,037.54, at the time of the death of George Calvert.

6th. That the auditor erred in applying payments made by the appellant, Charles, as executor of George, in discharge of the original indebtedness of George, to the payment of liabilities incurred by Charles in his individual capacity.

7th. That the auditor erred in introducing charges as for stock dividends received by the appellant, Charles, and omitting to allow credits for payments made by him on account of such dividends.

8th. That the auditor erred in postponing the allowance of a credit on account, for the note of Carter to Clagett until the 8th of Dec. 1849, in face of the evidence of the assignment thereof to Calvert before the 20th of January 1848, and the appellant was deprived of his opportunity for showing the precise time of such assignment.

9th. That the decree directs the property conveyed by

13     v.18

George Calvert to his sons, to be sold for the purpose of satis-
fying this claim only, overlooking altogether the other claims
secured by the deed of trust of 1837, and entitled thereby to
priority over the present claim, and also the claims so named
and directed to be paid *pari passu* with the present claim,
whereas, the decree, if proper to be passed at all, ought to have
directed an account to be taken of the said trust estate, and
ought to have provided for its application to the purposes di-
rected by the deed.

10th. The decree is also erroneous, because by it interest is
added to the principal, and made to bear interest.

*Daniel M. Thomas* and *J. Mason Campbell*, for the appel-
lee argued:

1st. That the *"paternal succession"* was closed by the settle-
ment of 1836, and cannot now be opened. In support of this,
they referred to the agreement of 1835, between Carter and
wife and George Calvert, and to the deed for *'Goodwood'* of
the 12th of November 1836, by which George Calvert con-
veyed land and negroes to the trustees for Mrs. Carter. From
these two documents it appears that George Calvert, in 1835,
having money in his hands due to Mrs. Carter by him, as ad-
ministrator of H. J. Stier, her *grandfather*, made an arrange-
ment with her and her husband to settle that indebtedness by
a conveyance, which he executed in the following year. The
testimony of Dr. Stuart shows, that Charles B. Calvert was
privy to this arrangement, and to the deed made in fulfillment
thereof. This, then, was the state of affairs when Mr. George
Calvert created his deed of trust of 1837. He considered him-
self as having fully paid Mrs. Carter all she was entitled to on
account of the *"paternal succession,"* by his deed of land and
negroes in 1836, and, in consequence, only provided thereby
for the payment of what was to become due to her at the time
of his death. Mr. George Calvert died in 1838, leaving things
in this condition, with Mrs. Carter entitled, by his deed of
trust of 1837, to claim nothing but her share of the property,

which was to belong to her children at her death, and bound with her husband under a penalty of $50,000, not to disturb the settlement of 1835 – 6, which he made of his other indebtedness to her. Now it is established, most positively, by the admissions of Charles B. Calvert himself, that there never had been any difference between the parties in regard to the settlement of 1835 – 6. Dr. Stuart says, that when he found from Bradly's statement to him, that the referees had not known of the previous settlement, he mentioned the fact to Charles B. Calvert, and his reply was, that he thought it was settled until the execution of the arbitration bond of 1846, which bond he thought opened the whole question as to the *first* claim as well as the *last;* that is, those which were due by his father before his death, and which were included in the settlement of 1835 – 6, as well as those due after his death. But not only is the fact apparent, from Charles B. Calvert's admissions to Dr. Stuart, that there never had been any difference between the parties in regard to the settlement of 1835 – 6, but a letter of George H. Calvert, the other appellant, to Carter, of March 10th, 1840, shows, that the only difference between the parties was in regard to the *second* claim; that is, for what George Calvert was bound to account at the time of his death. Whether or not the arbitration bond of 1846, authorised the re-opening of the old settlement, it is immaterial to inquire, for that bond was made for the specific purpose of settling the matter by arbitration, and the award made under it being now set aside, the arbitration bond is a nullity. The late chancellor, however, decided that the old settlement was not opened by virtue of that bond, and the reasons assigned by him are unanswerable. Nor can the fact that Carter made a correction in paper C.B.C. 3, be used to show that the *"paternal succession"* was considered an open matter at the time of the second arbitration. That paper was called for by the arbitrators and produced by Charles B. Calvert, and by them submitted to Carter, and by him corrected. And Dr. Stuart says, that neither he, nor Carter,

knew what items belonged to the respective successions.  So that Carter, most probably, corrected the paper, because he did not know but what it *might* legitimately have something to do with the *"maternal succession."*  It is therefore submitted, that even if mistakes were committed in the settlement of the *"paternal succession,"* (which is denied,) the old settlement of that claim cannot be opened and reviewed now.

2nd.  That the appellants have not shown themselves entitled to file the supplemental answer, and that answer was properly ordered to be taken from the files:—The right to file a supplemental answer must depend upon the petition for leave to file it.  The avowed purpose of the petition here is, to *surcharge and falsify* the settlement of 1835 – 6.  It does not pretend to set up any new matter affecting the finality of that settlement, nor does it show, in any way, that the matters sought to be alleged in this answer, could not just as well have been stated in the original answer.  The facts now sought to be introduced in the case, were known to the appellants at the time their first answers were filed, and were not then stated, they say, because they were advised by their counsel that the award of 1848 was final, and that it was unnecessary and improper to travel into accounts which were settled and adjudicated by that award.  *See Story's Eq. Pl.*, sec. 896 and *note*, and *sec.* 898.  3 *Sumner*, 584, *Smith vs. Babcock*. 1 *Md. Rep.*, 323, *Thomas vs. Doub*.  As to that part of the supplemental answer which relates to the *"maternal succession,"* it was clearly irregular.  The petition for leave says nothing about the *"maternal succession,"* and all of the answer relating to it is made without leave asked or obtained. 2 *Ves. & Bea.*, 163, *Strange vs. Collins*.  6 *H. & J.*, 311, *Thompson vs. McKim*.  19 *Ves.*, 628, *Curling vs. Townshend*.  The appellants place this part of their answer upon the ground of *making a discovery*, which they acknowledge ought to have been made in the original answers.  But in this respect they stand as volunteers.  No exception was taken to their first answers for failure to make this discovery, nor does

Calvert *vs.* Carter.

the appellee now ask for it. The discovery which the appellants now volunteer to make in regard to the *"maternal succession,"* would not have been permitted by the court even if the permission to make it had been sought in the petition for leave. They state in the original answer, that the amount ascertained by the arbitrators was correct, and the attempt is now, under the pretence of making the discovery sought by the bill, (but since rendered unnecessary by the proofs in the case,) to show that the amount ascertained by the arbitrators on account of the *"maternal succession,"* was greater than the sum actually due. If any such error exists, the evidence of it must have been in the possession of Charles B. Calvert at the time he stated, in his first answer, that the arbitrators had correctly ascertained the sum due, and before he will be permitted to correct his former assertion, he must, on petition for leave to do so, present a very strong case of surprise, fraud or mistake, which he has not even attempted to do. 2 *Ves. & Bea.*, 166, *Strange vs. Collins.* 7 *G. & J.*, 387, *Thomas vs. Fred. Co. School.* 4 *Sim.*, 61, *Greenwood vs. Atkinson.* 6 *H. & J.*, 311, *Thompson vs. McKim. Story's Eq. Pl.*, secs. 896, 898. Nor can this court go into the merits of the case disclosed by the supplemental answer. The answer was irregularly filed, and only by virtue of the agreement of the parties for the purpose of avoiding delay, and with the express understanding that, in the event of the court below refusing to grant the petition for leave, the answer was to be treated as if it had never been filed. The questions then to be determined are, 1st, did the court below err in refusing to allow the answer to be filed? and 2nd, if it was error, is that error subject to the revision of this court? The first of these questions depends upon the one already discussed, as to the finality of the settlement of the *"paternal succession."* If that settlement be deemed final, then the petition for leave presents no case for a supplemental answer, because it merely asks leave to surcharge and falsify that old settlement, which, of course, is useless, if the old settlement is to be treated as final. The second of

these questions is determined in the negative by the cases of *Thomas vs. Doub*, 1 *Md. Rep.*, 323; *Bowie vs. Stonestreet*, 6 *Md. Rep.*, 418; *Ellicott vs. Eustace*, 6 *Md. Rep.*, 506; *Gordon vs. Downey*, 1 *Gill*, 41; *Marine Ins. Co., vs. Hodgson*, 6 *Cranch*, 217, 218; and *Warren vs. Twilley*, 10 *Md. Rep.*, 46. The Act of 1854, ch. 230, does not make the motion to amend a matter *ex debito*, as contended for by the appellants, but simply *extends the time* within which an amendment may be made, still leaving it *discretionary* with the court to allow it or not.

3rd. The next question is, whether there is evidence in the case to show what is the amount due Carter on account of his wife's share of the *"maternal succession,"* and does the decree of the court below correctly ascertain that amount? Prior to the decision of the Court of Appeals on the award, the correctness of the award, in respect to the calculations, was not contested by either party. The estimate of the amount due on account of the *"maternal succession"* as made by the arbitrators, was $12,037.54, as of the date of Mr. George Calvert's death. This estimate, as admitted by the appellants, was the result of a careful investigation with all the facts laid before them, and was, as the appellants thought when their answers were filed, correct. Neither was any exception taken to this estimate by the appellee. The only contested point was, whether from the amount so ascertained, and admitted to be correctly ascertained, a supposed error in the old settlement of the *"paternal succession"* was to be deducted. Upon this, and this alone, the case was rested. The admission made in the answers is now binding upon the appellants, and it is even made more strongly binding upon them by their 14th interrogatory, filed under the Washington commission, and the *memorandum* attached to it. The amount of the claim therefore, as of the 12th of January 1838, the date of Mr. George Calvert's death, is thus established, and so the court below decided. And the appellants, in the face of their own admissions under oath, made deliberately and in full possession of

all the facts and of all the testimony of their own witness, will not be permitted to show a lesser amount due. 6 *H. & J.*, 311, *Thompson vs. McKim.* And to show that the amount which the arbitrators ascertained to be due is not an over estimate, the letter of Mr. George H. Calvert admits that, each child's share of the second claim was "about twelve or fourteen thousand dollars." The amount due as of the 12th of January 1838, is thus settled to be $12,037.54. The credits for payments made to the appellee down to July 1847, are shown in C.B.C. 4 which is admitted to be an accurate account of the moneys paid to the complainant prior and up to the time of its preparation. So that even if other payments were made during this period, (which is denied,) the appellants, by their own admissions, are estopped from showing it. And in showing other payments on account of this claim, they must be confined to the proof of payments made subsequent to the preparation of this paper, and with the exception of a payment of $500 in 1848, which has been allowed, all the further credits which they now seek to introduce are prior to that period, and were therefore, if only for this cause, properly disallowed by the court below.

4th. That the decree of the court below, as to the application of payments, was right:—The payments made to Carter as shown by C.B.C. 4, were about $1000 per annum, which is more than the annual interest due upon Mrs. Carter's share of the *"maternal succession."* But it appears by the two records filed in this case as exhibits, that Mrs. Carter had other claims to which this surplus annual payment may, and ought to be, applied. The appellee has filed and relied on, in this case, the answers of Charles B. Calvert, to two other bills filed against him by Carter. By the first of these he admits the receipt, after the year 1841, of dividends on stock amounting to $60 a year, payable to Mrs. Carter or her children; and by the second he admits that he owed Mrs. Carter, or her children, on account of the purchase of "Riversdale" by him, the sum of $4083, with interest from the 17th of May 1838. The

interest on this sum, and on $12,037.54, is $967 a year, and the stock dividends of $60 being added make $1027, which is just a fraction over the annual sum paid by Calvert, and it is, therefore, a very fair presumption, that this annual payment was intended by him to be on account of these three claims. The court below so assumed and directed, and there being no appropriation of the payments made by the parties, it had a right so to do; it is claimed by the appellants that these payments were made entirely on account of Mrs. Carter's share of the "maternal succession," and they rely on the fact of some of the receipts being given to Charles B. Calvert, as executor, to show this. And they insist that the balance of each payment, after paying the interest on that claim, should be applied in the reduction of the principal. But, if calling Mr. Calvert executor in the receipt proves any thing, it proves too much, because on the 21st of July 1840, he was, by decree, appointed one of the trustees under Mrs. Carter's marriage settlement, and his father's estate being in other respects settled at that time, the money which he held as executor, belonging to Mrs. Carter, was from that time, by construction of law, vested in him in his new capacity of trustee. 2 G. & J., 220, Watkins vs. The State. And the result of this claim, if allowed, would be to authorise a misappropriation by a trustee of his trust estate. Calvert, as trustee of this fund, had no right to pay any of the principal to Carter, but only the income. And a court of chancery will not presume that a trustee was acting in violation of his trust. And for this reason alone, even if the other stronger circumstances before stated were wanting, the court would presume Calvert was discharging his duty properly, and was not paying to Carter that which he had no right to pay him, viz: the principal of the trust fund; but that he merely intended to pay him the income of the estate, and that the surplus was intended to be on account of the other items of his indebtedness.

5th. That the exceptions filed by the appellee to the evidence taken under the commission returned May 10th, 1858,

were properly sustained by the court below for the reasons assigned in the opinion of the judge.

6th. *As to the second appeal:*—The action of the court below in refusing to suspend further proceeding upon the decree until a determination of the appeal, cannot be reviewed on appeal, as it was a matter resting entirely in its own discretion. The exceptions of the appellant, Charles B. Calvert, to the auditor's reports and accounts, were overruled and excluded by the court, because they were not filed in time. The first ground of exception taken was, that he had not been notified of the stating of the account. The answer to this exception is, that the auditor by the decree under which he acted, was required to state his account *from the proofs then in the cause,* so that there was no occasion for giving notice to the parties, as the notice is only given to enable them to offer additional evidence *when it is admissible. Alex. Ch. Pr.,* 126. The second exception impeaches the correctness of the amount of principal, ($12,037.54,) assumed by the auditor to be due on account of the *"maternal succession,"* and also contends that this amount, if due at all, ought not to be charged against the exceptant as *executor,* but against *Mr. George Calvert deceased, or his estate.* The correctness of the amount of principal assumed to be due by the auditor, has been already considered. The amount thus ascertained to be due not having been paid by Mr. George Calvert in his life time, became at his death, a debt due by his estate, of which Charles B. Calvert, *as executor,* was the representative. Hence, there is no error in charging the indebtedness to Charles B. Calvert as executor of his father's estate. And this error, (if it be one,) will not affect the final decree unless that also be erroneous. But, on examination, it will be found that the decree does not charge the amount ascertained by the auditor against the executor, but merely declares what sum is due, and to whom, and then with perfect propriety proceeds to declare that its payment is provided for by the deed of trust of the 11th of November 1837, and enjoins execution of the trust so created to secure such

14    v.18

payment. The other exceptions need not be noticed as all the principles involved in them have been already considered. As to the objection that the case was not submitted or set down for hearing, the answer is, that the decree itself states that the cause *stood ready for final hearing*, and this statement in the decree must be assumed by this court to be correct.   6 *H. & J.*, 407, *Rigden vs. Martin.*

BARTOL, J., delivered the opinion of this court :

This cause was before this court at December term 1854, when it was decided that the award of 1848, relied upon by the appellants in their answers, was void for want of certainty. 6 *Md. Rep.*, 135.

The award being thus removed out of the complainant's way, we think the Circuit court was correct in treating the settlement of 1835, 1836, as final. Without entering at length into a repetition and discussion of the evidence on this point, it is sufficient to refer to the able and elaborate opinion of Chancellor Johnson, in 4 *Md. Ch. Dec.*, 208 to 215. Whether the conclusions of the chancellor, upon this part of the case, as presented to him, were correct, it is immaterial now to inquire. The question discussed by him, was whether the arbitrators had transcended their powers in disturbing the settlement of 1836, and the chief difficulty in his way grew out of the terms of the arbitration bonds, which are somewhat ambiguous, and might, without doing violence to any sound rule of construction, be understood as submitting, to the arbitrators, both the *"paternal"* and*" maternal"* successions. The question before us however, is not as to the powers of the arbitrators under the bonds and agreement of submission. The award having been declared void, the agreement of submission, as a binding obligation, falls with it. Treating the arbitration bonds merely as evidence, we do not think they ought to have the conclusive effect which has been ascribed to them in the argument. Apart from the ambiguity in their language, and adopting the appellant's construction of them, it by no

means follows, that because the parties agreed to submit to an amicable decision by arbitrators, all matters of account embracing items before adjusted and settled, they intended thereby to admit that a previous settlement, made many years before, was not intended at the time, to be final, or that it might be unravelled and re-examined by another tribunal.

Whatever may be considered the true construction of the arbitration bonds in this respect, we do not think they can have the effect of countervailing the other evidence in the cause, which, in our opinion, conclusively establishes the finality of the settlement of 1836, and precludes the appellants from re-opening the subject of the "*paternal succession,*" then adjusted and closed.

The appellants have asked a reversal of the decree of the 27th day of May 1858, on the ground that the Circuit court erred in refusing to allow them to file their supplemental answer, and ordering the same, with the exhibits attached thereto, to be taken from the files of the court.

Before the Act of 1854, the law was well settled in Maryland, by repeated adjudications, that the action of the court below on such an application depended upon its discretion, and could not be assigned as error, or be reviewed on appeal. *Thomas vs. Doub,* 1 *Md. Rep.,* 324. *Warren vs. Twilley,* 10 *Md. Rep.,* 46.

It has been contended that the Act of 1854, ch. 230, has altered the practice in this respect; under that Act, it is said, an application to amend is no longer addressed to the discretion of the court, but is matter *ex debito,* which may be reviewed on appeal.

We are not aware that the Act of 1854 has ever been judicially construed by this court; it was referred to in *Warren vs. Twilley,* 10 *Md. Rep.,* 46, and also in *Bowie vs. Stonestreet,* 6 *Md. Rep.,* 433, but without any expression of opinion as to the effect of its provisions. The best construction we have been able to give it, is, that it was intended to enlarge the time within which amendments may be made in proceedings

Calvert *vs.* Carter.

in equity. Formerly "the proper time to apply for leave to amend was before the cause was at issue." *Story's Eq. Pl.*, sec. 886. The Act authorises amendments to be made *at any time before final decree.* They are still to be made *"on application to the court"*—*"so as to bring the merits of the case fairly to trial."* The court, to which the application is made, must of necessity judge of the propriety of the proposed amendment. The language of the Act is not unlike that of the Act of 1809, ch. 153, allowing amendments in proceedings at law; and it has been decided that no appeal will lie from the action of the court, on application to amend under the Act of 1809. 7 *Gill*, 237. 6 *Md. Rep.*, 508. We think the Act of 1854 must be construed in the same way; it does not in terms confer any right of appeal, and we think none exists. We have deemed it proper to express our opinion on the construction of the Act of 1854, although we are all of opinion that the Circuit court decided correctly in refusing the application to file the supplemental answer in this case, and if the question were open before us on this appeal, we would affirm the decree in this particular, as well for the reasons assigned by the judge of the Circuit court as for the additional reason, that the petition for leave to file a supplemental answer avows the single purpose to be, to surcharge and falsify the settlement of 1835-6; which, as we have already said, could not be disturbed in this case. We are clearly of the opinion that the propriety of allowing the supplemental answer to be filed, depended upon its avowed objects and purpose, as stated in the petition, and not upon other and distinct matters contained in the answer itself, and not referred to in the petition; they were irregular, and made without leave asked or obtained.

The next question presented by the record, is whether there is evidence in the case to show the amount due the appellee, on account of his wife's share of the *"maternal succession"* and whether the decree below correctly ascertains that amount. Upon this question we are all of opinion the Circuit court decided correctly. We think the answer of Mr. Bradly to the

fourteenth interrogatory was competent evidence binding upon all the parties, and taken in connection with the memorandum of agreement between the solicitors, attached to it, and the original answers of the appellants to the bill of complaint, in which they admit the ascertainment made by the arbitrators to be correct, is, we think, conclusive of the question of the amount due, and fixes it at the sum of $12,037.54, as of the 12th of January 1838. The decree directed the auditor to state his account "from the pleadings and proofs now in the cause," which the appellants have contended was error, insisting that they ought to have been allowed to produce before the auditor any evidence relevant to the matter of the account. Such is the usual form of a decree for account; but it is no doubt competent for a court of equity, in its discretion, to restrict the auditor to the pleadings and proofs already in the cause, and unless it should clearly appear that material and pertinent evidence, which it was in the power of the party to produce had been thereby excluded, it would furnish no ground for reversal. In this case it does not appear that the appellants had any such evidence to be produced before the auditor, and from the benefit of which they were deprived by the decree.

We come now to consider that part of the decree, rejecting the testimony taken under the commission returned on the 10th of May 1858. We think the deeds were properly rejected for the reason assigned by the court below; and, for the reason assigned by that court, we concur in the propriety of rejecting T.S.A. 1, 2, 3, 4, 5 and 6. T.S.A. 9, 10 and 14 were properly rejected as irrelevant.

As to T.S.A. 7, 8, 11, 12, 13, 15, 16, 17, we do not concur with the Circuit court in the reasons assigned for rejecting them, and think they ought to have been received. It is not good ground for rejecting evidence, admissible *per se*, that it is cumulative of other evidence in the cause. But in this case the appellants were not prejudiced by the the rejection of this proof, inasmuch as all the items of payments in T.S.A. 7, 8,

11, 12, 13, 15, 16 and 17, were otherwise proved and allowed in the account. The appellants were entitled to the benefit of the memorandum attached to T.S.A. 17, in the decision of the question of the application of payments, and in determining that question, we have considered that in connection with the other proofs in the cause. The general rules regulating the application of payments have been correctly stated by the judge of the Circuit court. In this case we have had some difficulty in reconciling the conflicting evidence on this subject, furnished by the acts and admissions of the parties. But after a careful examination of the pleadings and proofs, a majority of this court, (Mr. Justice Tuck dissenting,) concur in the opinion expressed by the judge of the Circuit court on this question, and adopt the reasons assigned by him.

Apart from the memorandum attached to T.S.A. 17, we think there could be no doubt of the correctness of the ruling of the court below on this question, and in the opinion of a majority of this court, that memorandum ought not to have a conclusive effect in determining the application of the payments, because, *first*, it was made with a view to a settlement by arbitration, and *secondly*, because it was manifestly erroneous in some particulars, as the list to which it was appended contains items of payments on account of stock, which had no connection with the account of the *"maternal succession."*

It follows from what has been said, that the decree of the 27th of May 1858, ought to be affirmed.

In conformity with that decree, accounts were stated by the auditor, and on the sixth day of November 1858, the Circuit court passed a final decree in the cause, ratifying the auditor's accounts, Nos. 3 and 4, and overruling the exceptions thereto filed by the appellant, Charles B. Calvert. From this decree an appeal was also taken, and the several questions involved in it have been considered by this court. We do not concur in the reason assigned by the Circuit court for overruling and excluding the exceptions to the auditor's report. Being filed before the action of the court on the report, and before the

cause was submitted, they were in time, and ought to have been considered; and they are properly before us for decision. The first ground of exception taken was, that the appellants "had not been notified of the stating of the account." Under the decree, requiring the auditor to state the account from the proofs already in the cause, no notice was necessary. The only object of notice is, to enable the parties to produce proof before the auditor, which in this case was not admissible.

The second, third, fourth and fifth exceptions are sufficiently answered, by what has been said by us in considering the decree of the 27th of May 1858.

The sixth exception is too general in its terms, to gratify the requirement of the Act of 1825, ch. 117, sec. 2. But conceding that it is sufficiently specific to be considered by this court, we have not discovered any thing in the record to sustain it.

As to the seventh exception, it may be observed, that it is not in the province of the auditor to tax the costs in his account; but his having done so is no ground for reversal, inasmuch as the subject of costs was specially disposed of by the decree below, and will be provided for by the decree of this court.

The eighth exception is not sustained by the record. The decree does not charge the amount ascertained by the auditor against the executor, but declares what sum is due and to whom, and also declares in what manner its payment is provided for, and directs the execution of the trust for that purpose.

In examining the decree of the 6th of November 1858, we find the Circuit court committed an error in directing that interest should be paid on interest which had accrued, and in that respect, the decree will be corrected by this court, so as to charge interest only on the principal sum ascertained by the auditor's account.

> *Affirmed in part, and reversed in part, and*
> *cause remanded by the following decree.*

This cause standing ready for hearing, was argued by the

respective solicitors and submitted, and the proceedings have been read and considered. Whereupon, it is this 26th day of November in the year 1861, by the Court of Appeals of Maryland, ordered, adjudged and decreed, that the decree of the Circuit court for Prince Georges county sitting as a court of equity, passed on the 27th day of May 1858, and from which one of these appeals was taken, be and the same is hereby affirmed. And it is further ordered, adjudged and decreed, that the decree passed in the same cause by the said Circuit court, on the 6th day of November in the year 1858, and from which an appeal was also taken, be, and the same is hereby reversed, in so far as it ascertains the interest and costs chargeable against the appellants. And it is further adjudged, ordered and decreed, that the auditor's report and account filed on the 31st day of August 1858, and the auditor's report and account filed on the 20th day of September 1858, (the said accounts being numbered respectively, 3 and 4,) be and the same are hereby ratified and confirmed, and that the exceptions thereto filed by the appellant, Charles B. Calvert, be and the same are hereby overruled and disallowed for the reasons stated in the opinion of this court. And it is further adjudged, ordered and decreed, that the sum of $12,037.54, (twelve thousand and thirty-seven dollars and fifty-four cents,) is due and payable as principal to Charles B. Calvert and Robert E. Lee, the trustees under the marriage settlement between the complainant, Charles H. Carter, and his deceased wife, Rosalie E. Carter, which appears in the proceedings; and that the further sum of $5455.45, (five thousand four hundred and fifty-five dollars and forty-five cents,) of interest on the said first mentioned sum to the 20th of August 1858, is due and payable to the complainant, Charles H. Carter, and that the payment of the said two sums amounting to $17,492.99, (seventeen thousand four hundred and ninety-two dollars and ninety-nine cents,) is provided for and secured by the deed of trust of George Calvert proved in the cause, bearing date on the 11th day of November 1837.

And it is further adjudged, ordered and decreed, that the defendants, Charles B. Calvert and George H. Calvert, trustees under the said deed of trust, do forthwith proceed to execute the powers vested in them by the same, for the paying and satisfying the said sum of $17,492.99, (seventeen thousand four hundred and ninety-two dollars and ninety-nine cents,) with interest on the sum of $12,037.54, (twelve thousand and thirty-seven dollars and fifty-four cents,) a part thereof, from the twentieth day of August 1858, till paid, (which interest the said Charles H. Carter will be entitled to receive,) and, for that purpose, do immediately sell the property mentioned in, and conveyed to them by said deed, or so much thereof as may be necessary to that end.

And in order that this decree may be carried into effect, the cause is hereby remanded to the Circuit court for Prince George's county.

And it is hereby further ordered, adjudged and decreed, that the costs which accrued prior to the first appeal, and the costs of that appeal, be paid by the appellants as decreed on the former appeal; and that the costs which have accrued since the decision of the first appeal, both in the court below and in this court, shall be paid by the parties in equal proportions, the appellants paying one-half thereof, and the appellees the residue.

(Decided November 27th, 1861.)