CASTEEL *v*. WHITE RIVER GROCERY CO.

Opinion delivered May 14, 1923.

1. TRUSTS—LIABILITY OF TRUSTEE.—If a trustee violates the rights of a beneficiary by neglect or misconduct, the beneficiary may hold the trustee liable for the damage caused.

2. EVIDENCE—PREPONDERANCE.—In determining the preponderance of evidence in an equity case, although it is proper to consider the number of witnesses testifying, the number of witnesses is not the test of the weight of the evidence, but the court must consider the interest of the parties, the relationship of witnesses to them, the reasonableness or unreasonableness of their testimony, and all the circumstances detailed in evidence.

Appeal from Baxter Chancery Court; *Lyman F. Reeder,* Chancellor; affirmed.

*Allyn Smith,* for appellant.

*S. M. Casey,* for appellee.

WOOD, J.   On the 14th of October, 1916, W. H. Casteel, a merchant at Buffalo, Arkansas, entered into a verbal contract with the White River Grocer Company (hereafter called company) by which he turned over to the company his stock of goods and accounts due him for merchandise.   Casteel at that time owed about $2,750, which he was unable to pay.   He owed to the company about $400.   His stock of goods invoiced $1,525.   It was the understanding between Casteel and the company that the latter should account to the creditors of Casteel for the amount of the invoice, less ten per cent.

This action was instituted by Casteel against the company.   He set up in his original complaint the contract, as above stated, and alleged that the company was to collect the accounts promptly, without cost to Casteel, and, after paying the debt to itself and the other debts, was to turn all uncollected accounts back to Casteel; that the company had settled all the debts owing by Casteel for about fifty cents on the dollar, and had collected a large sum of money on the accounts for merchandise due him, for which it had refused to account; that it had suffered such of the notes and accounts as were due but not collected to become outlawed—barred by the statute of limitation.   He prayed for an accounting, and judgment for the amount of the notes and accounts which the company had negligently permitted to become barred by limitation.   By an amendment to his complaint, Casteel alleged that the contract was that both Casteel and the company were to collect the notes and accounts due Casteel without cost to Casteel; that he, in good faith, was proceeding to collect the accounts, when the company, without right, notified his debtors not to pay him, and that therefore he was unable to make collections; that the company negligently failed to make collections, and this conduct of the company amounted to a conversion by the company of Casteel's notes and

accounts, and that it was liable to him, on an accounting, for the whole amount of the uncollected accounts.

The company answered the complaint, and admitted that the stock of goods, notes and accounts of Casteel were turned over to it, as alleged, but it denied that the notes and accounts were to be collected without cost to Casteel. On the contrary, it alleged that the notes and accounts were to be collected by the company as far as possible. It alleged that it took charge of the goods, the notes and accounts, under the contract, and sold the goods for the best price obtainable, eighty cents on the dollar, and turned the notes and accounts over to one S. E. Denton for collection, who collected what was possible, and the company applied the entire proceeds on the debts of Casteel, including its own debt, *pro rata.* But the sum realized was not sufficient to pay the creditors of Casteel, and that he was still due the company the sum of $227.50. It alleged that Casteel, after he had turned over his notes and accounts to the company to be applied on this indebtedness to his creditors, continued to collect same himself and to apply the proceeds so collected to his own use, in violation of his contract with the company. It alleged, among other things, that many of the notes and accounts were denied by the parties who Casteel claimed were thus indebted to him; that many produced proof that they had paid same to Casteel. It alleged that the notes and accounts were largely worthless, and that the company realized only a small per cent. in the collection of the same, and that such amount, after paying a reasonable fee for collection, together with the proceeds from the sale of the stock of goods, was applied to the payment of Casteel's debts, and the entire sum was sufficient to pay only slightly over fifty cents on the dollar of those debts. The company, by way of cross-complaint, set up that Casteel was indebted to it in the sum of $227.50, as above stated, for which it prayed judgment.

The prayer of the complaint for an accounting to be had before a master was granted. While the record is silent as to whether the master to be named was agreed upon by the parties, the master's report shows that Z. M. Horton was named as special master, and that the cause was referred to him to state an account. His report shows that he took the depositions of Casteel and two of his brothers and of Harrison Gaines and James Carter, for Casteel, and the depositions of Seth Matthews and S. E. Denton for the company, and, after considering these depositions, with all the exhibits and pleadings in the cause, he made certain findings of fact to the effect that the stock of goods and books and accounts, etc., which Casteel had on hand at his store in Buffalo, Arkansas, were turned over to the company, which undertook to collect in the matter of winding up the business of Casteel, according to the contract between them. The master found that the company had used due diligence in its effort to collect these accounts, and that, after calling to its assistance S. E. Denton of Cotter, one of the best of collectors, it realized the sum of $178.92, which, added to the sum of $1,372.68 realized from the stock of goods, it applied to Casteel's debts; that the amount paid only about fifty-five per cent. of the principal of those debts. The master found that the company had acted in good faith in carrying out the contract; that many of the accounts turned over to the company had not been collected; that many of these accounts were against near relatives of Casteel, and that some of them were denied by the alleged debtors; that the company, having accounted to the creditors for all sums that had come into its hands, was not liable to Casteel in any sum.

The report of the master recites that the attorneys for the respective parties argued the case before him by brief. His report was made at the April term of the court, 1921. After the report of the master was filed, the depositions of the two brothers of Casteel were re-

taken, and also Casteel took the deposition of one Bonner. In their original depositions the brothers of Casteel testified that they were present during the conversation between Will Casteel and Seth Matthews, the representative of the company, in which conversation they entered into the verbal contract out of which this action arose. They were called as witnesses to the agreement, and testified as to what was said. The testimony was elicited by question and answer. They stated, in substance, that the contract was that the company was to take the stock at ten per cent. discount and take the accounts, and each one was to collect on the accounts to cover the indebtedness, and the balance of the accounts were to be turned back to their brother, Will Casteel.

In the depositions of James and Elbert Casteel that were retaken after the filing of the master's report, both stated that Will Casteel and the company were to collect on the accounts, and there was to be no expense to the collections: that neither he nor any one else was to have any pay for making the collections.

The testimony of Bonner was to the effect that the accounts due Casteel were turned over to the company for joint collection. The company was to hold the books, and the amount collected, without any discount of fees for collection, was to be credited on Casteel's debt. Casteel stated at the time that the accounts were all good, and that he could collect them all.

The testimony of Matthews, who conducted the negotiations for the company, was to the effect that the company was to take over the notes and accounts, collect what it could, and apply the same on the indebtedness of Casteel. The creditors found out that the company was to settle up the accounts, and he took it up with the creditors and got their permission to act as trustee and collect the accounts. Nothing was mentioned about Casteel's collecting or about the company's collecting. The company was to take them and try to collect what they could to apply on his indebtedness, after

the books and the accounts were taken over, Casteel never made any effort to assist the company in collecting the accounts, and never inquired about what success it had. The collector, Denton, reported that the parties from time to time would say that they had paid Casteel, or that they didn't owe the debt, or something to that effect. Witness wrote all the debtors on the list furnished by Casteel, and half of them denied the debts, and others would not pay. He used all the means he knew, consistent with good business policy, to collect them. It was shown on behalf of the company, and Casteel himself testified, that, after he had turned over the books and accounts to the company, he collected some money from his creditors, and, instead of turning the money over to Matthews, he applied the same to a personal debt on which he was surety. Casteel testified, as to this transaction, that, while he was in business in Buffalo, he had signed a note with some person as surety, and before the note came due the principal brought the money to him to pay the note. He put the money in the drawer, and when he made the deal with the company he forgot about the money to pay the note being in the drawer, and he took the first money he collected from the accounts that had been turned over to the company and paid off the note. The company, after that transaction, notified the list of debtors not to pay him the amounts of the accounts.

Denton testified that he was a justice of the peace, and also a licensed lawyer, and made a business of collecting claims; that he had had a good deal of experience along this line. He charged for collecting accounts of the kind turned over to him the sum of 25 per cent. commission on the amount collected. The Casteel accounts were turned over to him by Matthews for collection. He stated that he did all that he could do to collect the same, and out of the entire list he collected only $528.40. Two-thirds of them denied that they owed anything. After the accounts were placed in his hands,

Casteel never made any request to turn any of them over to him to collect.. He testified as to the efforts that he made to collect the accounts. He stated that, in going over the accounts with Casteel, when he came to his mother's account, Casteel said to let that alone, and witness wrote Elbert Casteel ten or fifteen letters concerning his account, and never heard from him. After doing all he could to collect the accounts at 25 per cent. commission, and finding that he could not make expenses, he told the company he would keep them a while longer and do the best he could at 50 per cent. commission. After deducting his commission, he turned over to the company the sum of $178.92.

The above are substantially the facts upon which the court rendered a decree in favor of the appellee, from which is this appeal.

It is well settled that, if a trustee violates the rights of a beneficiary by neglect or misconduct, the beneficiary may hold the trustee liable for the damage caused. *Clark* v. *Spanley,* 122 Ark. 366.

The issues presented by this record are purely issues of fact. Appellant contends that, under the contract, he and the company were each to have the right to collect the accounts due him, and, after the debts were paid, the amounts uncollected were to be turned back to appellant. He further contends that, after the accounts had been turned over to the company, he proceeded, in good faith, to make all the collections he could, until the company made it impossible for him to proceed further by notifying his debtors not to pay him, but to pay the company, and that thereafter the company negligently failed to collect the accounts, ninety per cent. of which he could have collected.

The appellant contends that the preponderance on these issues is decidedly in his favor. If numbers alone were the criterion in determining whether the preponderance is in appellant's favor, we could agree with learned counsel. But, while it is proper to consider numbers, yet

that is not the test. The court must take into consideration the interest of the parties, the relationship of witnesses to them, the reasonableness or unreasonableness of the testimony, and all the circumstances detailed in evidence. When this is done, we are convinced that the findings of the chancellor, to say the least, are not clearly against the preponderance of the evidence. The undisputed testimony shows that the company had the consent of the other creditors of appellant to act as trustee in winding up the affairs of the appellant, that is, collecting the accounts due him and using all assets available in the liquidation of his debts. It is unreasonable to conclude that the company would have entered upon a trust of this kind for the creditors, as well as the appellant, if the understanding was that appellant, the bankrupt, was to have the same control over the books and accounts that the company had. Doubtless the other creditors of appellant would not have consented to any such arrangement.

We do not discover any testimony to warrant the conclusion that the company did not exercise all the diligence required of it to collect the accounts in its hands. A decided preponderance of the evidence shows that it exercised all the diligence that any reasonable person under the circumstances would exercise to make the collections. We do not find any neglect or misconduct whatever on the part of the company that will render it liable to the appellant.

The trial court was correct in so holding. Its decree is therefore affirmed.