WHITE RIVER, LONOKE & WESTERN RAILWAY COMPANY *v*. STAR RANCH & LAND COMPANY.

Opinion delivered November 11, 1905.

1. BURDEN OF PROOF—RES JUDICATA.—Where a decree in a former suit was offered in evidence to establish the defense of *res judicata*, it was

error to instruct the jury that the defense must be established by evidence that is clear and conclusive, a fair preponderance of the testimony being sufficient.   (Page 135.)

2. INSTRUCTIONS—WHEN MISLEADING.—Instructions which overlook one of the issues in the case are misleading.   (Page 136.)

3. LEASE—TERMINATION.—Where a contract of lease of personal property, secured by bond with sureties, stipulated for the payment of rent and for the return of the property at a certain place, a subsequent agreement of the lessor to accept the property where situated will release the lessee's sureties from liability for subsequent rent of the property and for the expenses of its removal.   (Page 136.)

4. SAME—REIMBURSEMENT OF EXPENSES—ATTORNEY'S FEES.—A stipulation in a lease that the lessee will reimburse the lessor for any expense incurred in recovering possession of the leased property does not contemplate that the lessor shall be reimbursed for the fees of attorneys in a case wherein the lessor was drawn into litigation over the property with third parties.   (Page 137.)

5. CONTRACT—DAMAGES.—Attorney's fees are not ordinarily held to be an element of damages which may be recovered for a breach of contract.   (Page 137.)

6. SAME—REPAYMENT OF ATTORNEY'S FEE.—A stipulation in a lease that the lessee will reimburse the lessor for any expense incurred in recovering possession of the leased property does not contemplate the repayment of attorney's fees in a suit by the lessor for recovery of possession of the property at the end of the lease or upon default in payment of rent, as that construction would impose a penalty upon the lessee's right to litigate.   (Page 137.)

7. CORPORATION—POWER TO CONTRACT—ESTOPPEL.—One who has contracted with a corporation and received the benefit of such contract can not dispute its power to enter into the contract.   (Page 138.)

8. LEASE—ASSIGNMENT—COLLATERAL ATTACK.—In a suit on a contract of lease and a bond given to secure its performance by one who holds under written assignment, regular on its face, from the lessor, the lessee can not question the validity of the assignment.   (Page 138.)

9. PRINCIPAL AND SURETY—DISCHARGE—LIABILITY PREVIOUSLY INCURRED.— Where a lease of personal property stipulated that rent should be paid, and that on the termination of the lease the lessee should deliver the property at a specified place, the fact that the lessor subsequently accepted the property at another place did not discharge the lessee's sureties from liability for rents accrued before such acceptance. (Page 138.)

Appeal from Pulaski Circuit Court, Second Division; ED-WARD W. WINFIELD, Judge; reversed; affirmed.

STATEMENT BY THE COURT.

This is an action brought by appellee, the Star Ranch & Land Company, a Missouri corporation, against the White River, Lonoke & Western Railway Company and others to recover upon a bond executed by appellants to appellee's assignor, the McLeod Lumber Company, to secure the performance by said railway company of its contract entered into with the McLeod Lumber Company for the lease of certain property. The complaint alleged that August 12, 1898, the McLeod Lumber Company, then a Missouri corporation, leased and delivered to the defendant railway company about 200 tons of 35-pound steel rails, etc., for the term of two years, beginning August 20, 1898, with the option to the lessee to extend said lease one, two or three years, the said railway company agreeing to pay for the rent of said property $550 per annum, payable quarterly on the 20th of November, February, May, and August; and further agreeing at the termination of said lease, or its failure to keep the conditions of the same, to deliver said property at Neelyville, Missouri, or at the junction of its said road with the St. Louis, Iron Mountain & Southern Railway, as might be requested, and, if it failed to do so, upon demand to pay all expenses of recovering said property. That, to secure the performance of the conditions of said lease, the said railway company executed a bond in the sum of $5,000 with the defendants, A. P. Brewer, J. R. McRoberts, Dan Daniels, J. N. Wooley and Joe P. Eagle, as sureties. That subsequently the appellee, Star Ranch & Land Company, became the possessor and owner of all the property of the McLeod Lumber Company, and was the owner of said lease, and entitled to all the benefits of the same. That $825 rent was due and unpaid, being for the period of eighteen months. That appellee had demanded the return of said property of the railway company; that this demand had not been complied with, and, in order to recover possession of said property, plaintiff had paid an attorney's fee of $500. That a further expense of $529.91 had been incurred in taking up and removing said property. Judgment was asked for $1,854.91.

The lease provided, in substance, that the McLeod Lumber Company agreed to lease to the White River, Lonoke & Western

Railway Company certain steel rails, straps, nuts, bolts and spikes for the term of two years, beginning August 20, 1898, on the condition that the lessee should pay $550 in quarterly payments of $137.50 each, due as aforesaid; the ownership of said property being retained in the lessor. That in default of said payments the lessee agreed, upon demand therefor by said lessor or its assigns, to deliver said property at Neelyville, Missouri, or at the junction of the lessee with the St. Louis, Iron Mountain & Southern Railway. The lessee agreed to pay taxes, etc., and expenses incurred in the execution and recording of said agreement "or the retaking or recovering possession of said property, leased as aforesaid, at the expiration of this lease, or upon any default in the payment."

The obligation of the bond sued on is as follows:

"Now, therefore, if the said White River, Lonoke & Western Railway Company shall promptly pay the rent reserved in said lease as and when the same becomes due and payable, and shall return the said rails, bolts and fastenings, nuts and spikes, and shall keep and perform all of the terms, conditions and stipulations by it to be kept and performed in said lease agreement, reference to which is made for greater particularity, then this obligation shall be void."

The answer and amended answer of the sureties, Daniels, Eagle and Wooley, denied specifically every material allegation in the complaint, denied any indebtedness whatever, and alleged that the plaintiff had elected to receive said property where it stood in lieu of its return, when notified that said property was subject to its demand and delivery under the terms of the contract, and denied appellee's right to sue on the bond. Said defendants further pleaded *res judicata* in their amendment to answer, and that said appellee had agreed upon a settlement of said claim, and had voluntarily filed a cross-complaint, and taken a decree for said property and rent against the principal, and released the sureties from liability upon said bond in a certain cause in the Lonoke Chancery Court.

The railway company failed to answer, and judgment by default was rendered against it for the full amount claimed in the complaint. The plaintiff introduced testimony tending to show an assignment to it of the lease and bond by the McLeod

Lumber Company, and to establish each item of liability contended for, viz.: $825 for rent, $500 for attorney's fees, and $529.91 expenses of moving the property.

The defendants then introduced in evidence a decree of the chancery court of Lonoke County, and the pleadings in the cause in which same was rendered. That was a suit brought by J. M. Davis, W. H. Eagle and Max Frolich, trustees, against the railway company and J. N. Wooley to foreclose a mortgage on all the property of that company, executed subsequent to the date of the lease contract and bond sued on. That suit was begun February 25, 1901, and decree was rendered June 29, 1901. The plaintiff herein, Star Ranch & Lumber Company, was made a party to that suit upon an allegation in the complaint that it claimed an interest in and lien on some of the property involved in suit, and that company filed its answer and cross-complaint, setting forth the ownership of the said property described in the lease contract and asserting a claim for rent due under said contract, and prayed for decree against said railway company for the amount of said rent and the return of said property at the place of delivery named in the contract.

The final decree in that cause was in favor of the plaintiffs therein for recovery of the mortgage debt, and declaring same a lien on the mortgaged property; also in favor of the Star Ranch & Land Company against the railway company for the sum of $423.42, rent and interest, which is also decreed to be a lien on all the property of the railway company, and the right of said Star Ranch & Land Company to remove said property described in the lease contract, after the sale under the decree, was also decreed. The court ordered a sale of the property of the railway company by a commissioner.

The decree bears the following indorsement, which is proved to have been written on the draft of the decree before entry, signed by attorneys for all the parties, including the Star Ranch & Land Company:

"We hereby agree that foregoing decree was ordered of record in the records of Lonoke Chancery Court. Done this June 19, 1901."

T. C. Trimble testified that the decree was entered by consent of all parties as a settlement of all matters between them, and

that the Star Ranch & Lumber Company, through its attorney, Mr. Foster, agreed to accept the property where it was then situated, instead of requiring a delivery at the place named in the contract. He also testified that the sum of $423.42, as stated in the decree, was agreed upon as the amount of rent due. He said that Mr. Foster elected to let the rails remain there because he considered it to the best interests of his clients, thinking that they could get more for the rails by letting them remain there.

J. N. Wooley testified that when the decree was taken Mr. Foster told him that he would let the rails remain because he thought they could get more for them to leave them there than to take them up.

Dan Daniels, one of the defendants, testified that at the time the decree was taken Mr. Foster gave him to understand that it was a satisfactory settlement of the whole matter, and released the bondsmen from further liability.

R. M. Foster, attorney for appellee, testified that the chancery decree was not a consent decree, and was intended to settle nothing except the matters embraced therein. He denied that he agreed to accept the rails, or agreed in any way to release the bondsmen, and stated that his client took possession of the property as soon as it was permitted to do so.

The court among other instructions, gave the following, over the objection of the defendants:

"6. The court instructs the jury that the decree offered in evidence is conclusive only as to the matters and issues that were involved and between the parties plaintiff and defendants named in the suit in which it was rendered; and unless the evidence is clear and conclusive that said decree was intended by this plaintiff and the defendant, the White River, Lonoke & Western Railway Company, to include and finally settle up all the claims and demands arising on the bond herein sued on, you will find a verdict for the plaintiff for whatever amount you may believe from the evidence is still due and owing it from the defendant.

"9. The court instructs the jury that the making and delivery of the lease and bond sued on and offered in evidence herein is admitted by all the defendants; that the only defense alleged is that it was agreed between Robert M. Foster, attorney

for plaintiff, and the defendants that the decree offered in evidence was intended to include and settle all claims and demands arising on said lease and bond, and to release and discharge said bondsmen; and unless the evidence is clear and conclusive that there was such an agreement, and you further find from the evidence that there was a good and valuable and independent consideration to support the alleged agreement, you will find a verdict for the plaintiff for whatever amount you believe from all the evidence to be due and owing plaintiffs." Exceptions were duly saved to the giving of these instructions.

The jury returned a verdict in favor of the plaintiff for the sum of $1,604.91.

*Thos. C. Trimble, Joe T. Robinson, Thos. C. Trimble, Jr.,* and *J. H. Harrod,* for appellants.

The contract and bond sued on was void, the McLeod Lumber Co., under its charter having no power to make the contract. As to questions which relate to their power or dealing with third persons, corporations are limited by their respective charters. Angell & Ames on Corp. § 256; 1 Gill & John. 495; 4 Am. & Eng. Enc. Law (1 Ed.), 245; 52 N. Y. Sup. Ct. Rep. 97; 42 Md. 581; 17 L. R. A. 97. Even if not void, the corporate existence of McLeod Lumber Co. having expired, it had no power to assign it. 87 N. Y. 497; 128 Fed. 209; 4 Am. & Eng. Enc. Law (1 Ed.), 259; *Ib.* 306.

Instruction No. 1 was erroneous in assuming the existence of a debt for rent, expense of taking and delivering the property and a liability for attorney fees.

Instruction No. 6 was misleading. "In an action upon the same claim or demand the former adjudication concludes parties and privies, not only as to every matter offered and received to sustain or defeat the claim, but also as to every matter which might and should have been litigated in the first suit. 94 U. S. 351; 121 *Ib.* 525; 15 Cal. 145; 78 Ky. 413; 62 S. W. 10. Instruction No. 9 was also misleading.

*R. M. Foster* and *E. B. Kinsworthy,* for appellee.

In the absence of proof to the contrary, corporate acts will be presumed to be valid. 10 Cyc. 1155 S. and note; 22 Cal. 620;

63 N. Y. 62; 96 U. S. 258. After accepting the benefits of a contract, a corporation will not be permitted to set up the doctrine of *ultra vires* to defeat an action brought against it under such contract. 74 Ark. 190; 63 N. Y. 62; 39 L. R. A. 559; 96 U. S. 258; 110 N. Y. 519; 96 U. S. 640; 10 Cyc. 1163 (D.); 16 Mass. 94; 22 N. Y. 494; 106 N. Y. 473; Cook on Corp. 4 Ed. vol. 2, 1373 and notes; Clark on Corp. 183 and notes. Though a lease by a corporation is *ultra vires,* yet the lessor may recover the rent where the lessee has occupied the premises demised. 74 Hun, 638; 127 N. Y. 252; 11 Neb. 192.

Any objection to the introduction of the resolution and to the transfer on the ground of the non-existence of the McLeod Lumber company at the time the transfer was made, was waived by failure to make specific objection thereto in appellant's motion. 62 Ark. 203; 60 Ark. 550; 58 Ark. 381. Since the verdict could not have been different under any proper instructions the court might have given, this court will not disturb it. 54 Ark. 289; 56 *Ib.* 594; 62 *Ib.* 228; 59 *Ib.* 431.

One who appeals cannot complain that the instructions are not complete, if he made no effort to have the omission supplied at the trial. 60 Ark. 613; 73 Ark. 594. The chancery suit was not between the same parties, and did not relate to the same subject-matter. It is no bar to this action. Herman on Estoppel, § § 103-105; 29 Ark. 575; 66 Ark. 336; 65 Ark. 467; 53 Ark. 307; 55 Ark. 286; 64 Ark. 301. The burden was on defendants to prove that the chancery suit was a bar. Herman on Estoppel, vol. 2, § § 286, 236, 237; Crawford's Digest, 747.

Appellants attorneys, *supra,* in reply. Attorneys' fees, not being specifically provided for in the obligation, are not recoverable. 42 Ark. 168, and citations.

McCULLOCH, J., (after stating the facts.) The two instructions numbered six and nine, given by the court at the request of appellee, were both incorrect, and should not have been given. In the first place, they improperly put the burden upon appellants of showing by evidence *"clear and conclusive"* that the decree of the chancery court was intended as a final settlement between the parties. This need only have been established by a fair preponderance of the testimony. The effort of appellants was not an attack upon the decree, but to show that it was agreed upon

as a final adjustment of all matters between the parties, and that it operated as a release of the sureties from any further liability.

The instructions were also erroneous in leaving out of account the contention of appellants that appellee, through its agent and attorney, had elected to accept the property where it was then located (on the track of the railway company), instead of requiring a delivery at the place stipulated in the lease contract. The testimony of the two witnesses (Trimble and Wooley) tended to establish the fact that appellee had released its lessee, the railway company, from that part of the contract, and elected to accept the property there on the railroad track, because of advantages then expected to be derived by appellee in the sale of it. The testimony was conflicting on this point, and it should have been submitted to the jury upon proper instructions. These two instructions ignored that question altogether, and permitted the jury to find against the sureties for expenses thereafter incurred in removal of the property and for rent thereafter accruing, even though they might have found that appellee had agreed to accept a return of the property at that time and place, which was in effect a termination of the lease. If appellee saw fit to waive the requirement of delivery of the rails at the place named in the contract, and agreed with its lessee to accept them at another place, it could not thereafter hold the sureties liable for the expense of taking the rails up and removing them to the original place of delivery named in the contract. Nor could it claim rent after the date of acceptance, because the contract was then at an end.

The agreement to accept the rails where they were then located on the track of the railway company (if such agreement was made as claimed by the witnesses for appellants) put an end to the contract of the railway company which appellants had stood surety for, and they can not be made liable for any expense subsequently incurred in removing the rails, or for rent accruing after that time. *O'Neal* v. *Kelley*, 65 Ark. 550, and authorities cited.

We do not mean to say that this alleged agreement was such a change in the original contract as released the sureties from liability for rent payments which had already accrued. 1 Brandt on Sur. & Guar. § 443. It operated, not as an alteration or

.abrogation of the contract, but as a termination of the lease, and as an acquittance of the principal, as well as the sureties, from that part of the contract requiring a delivery of the rails at the place named therein.

The court also gave an instruction, over the objection of appellants, permitting appellee to recover attorney's fees expended, and the jury included in their verdict the sum of $500 on that account. We do not think that attorney's fees are recoverable in this case. The language of the contract is not sufficient to indicate that the parties had that in contemplation as an item of possible expense in recovering possession of the property at the end of the lease, or default in payment of rent when due. The clause of the contract which it is claimed covers attorney's fees is as follows: "The said lessee agrees to pay all taxes, license or charges of any kind whatsoever that may be levied, assessed or become payable on said rails, and to reimburse said lessor, its successors or assigns, for any expense that may be by it incurred, attending the execution, acknowledgment, filing or recording of this agreement, as required by law, or the retaking or recovering possession of said property, leased as aforesaid, at the expiration of this lease, or upon any default of the payments as herein provided." It cannot be said to have been reasonably within the contemplation of the parties that the lessee should pay the fee of attorneys in case the lessor should be drawn into litigation with third parties concerning the ownership or right of possession of the property. Yet that is precisely the basis of appellee's claim here for recovery of attorney's fees. The fee was charged and paid for services in a suit brought by a mortgagee to foreclose a mortgage lien on the property of the lessee, and appellee intervened therein to claim the rails and rent therefor.

Attorney's fees are not ordinarily held to be an element of damages which may be recovered for breaches of contract. *Jacobson* v. *Poindexter*, 42 Ark. 97; 13 Cyc. pp. 80, 81, and cases cited; *Haverstick* v. *Erie Gas Co.*, 29 Pa. St. 254; *Henry* v. *Davis*, 123 Mass. 345.

Nor could the parties have had in mind the repayment of attorney's fees in a suit by the lessor against the lessee for the recovery of possession of the property at the end of the lease or

upon default in payment of rent. This would be a penalty upon the right of the lessee to litigate. *Boozer* v. *Anderson,* 42 Ark. 167; *Jarvis* v. *Southern Grocery Co.,* 63 Ark. 225.

Appellants attack the right of appellee to sue upon the contract because (1) such contract was not within the charter powers of appellee's assignor, McLeod Lumber Company, and (2) that the charter of that corporation had expired by limitation under the laws of Missouri when it attempted to assign the contract to appellee.

Appellants are not in position to raise either of these questions. Having contracted with the above-named corporation, and received the benefit of such contract, they can not dispute its power to enter into the contract. *Minneapolis F. & M. Ins. Co.* v. *Norman,* 74 Ark. 190.*

Appellee being the undisputed holder *de facto* of the contract and bond under written assignment, regular on its face, from the McLeod Lumber Company, appellants cannot question it. *Castle* v. *Lewis,* 78 N. Y. 131; *The Prussia,* 100 Fed. 484; *Blackford* v. *Westchester Fire Ins. Co.,* 101 Fed. 90; 4 Cyc. 62, and cases cited.

The liability of appellants, as sureties, for the amount of rent up to time of the alleged acceptances of the property was not discharged by the alleged agreement to make the decree a final settlement between the parties. The rent then due was a fixed liability of the principal and sureties, and the alleged agreement to terminate the contract by acceptance of the property did not release them.

According to the undisputed facts, appellee is entitled to recover the amount of rent agreed upon, $423.42, with interest from June 19, 1901. If it elects to accept a judgment for that amount, and will, within ten days from this date, enter a remittitur down to that sum, the judgment will be affirmed. Otherwise, it will be reversed, and remanded for a new trial. It is so ordered.

---

*See also 5 Thomp. Corp. § 6021.—REP.