HARDY *v.* HARDY.

4-9028
230 S. W. 2d 6

Opinion delivered May 15, 1950.

*Rose, Dobyns, Meek & House,* for appellant.

*Jacoway & Jacoway* and *Edward E. Stocker,* for appellee.

J. W. PATTON, JR., Special Justice. This suit was filed by William McCombs Hardy, one of three beneficiaries of a testamentary trust, to require the trustee, Corinne McCombs Hardy, to restore to the trust estate the sum of $12,911.34, being one-third of the proceeds of certain timber sales made by the trustee during the years 1945 and 1946. This is one of several matters in controversy between these parties and a companion case, No. 9031, is being this day decided by this Court.*

M. W. Hardy died testate on November 13, 1929, and his will was duly probated in Pulaski County. Under the provisions of the will the widow, Corinne McCombs Hardy, received as her absolute property the family home in the City of Little Rock and certain designated personal property. The testator also devised to his widow a one-third interest for life in the remaining real estate and bequeathed to her a one-third interest absolutely in the remaining personal property. The residue of the estate was devised and bequeathed to Corinne McCombs Hardy and the First National Bank of El Dorado, Arkansas, in trust for William McCombs Hardy, Robert Lamar Hardy and Frances Hope Hardy, the three minor children of M. W. Hardy and Corinne McCombs Hardy.

* See *infra,* p. 305.

The trustees were given broad powers of control over the trust property and it was provided that the trust was to terminate when the youngest child reached the age of thirty years. William McCombs Hardy was born January 3, 1915, and Robert Lamar Hardy and Frances Hope Hardy, twins, were born February 6, 1927, and all three are now living. It was in connection with the last settlement of the trustee with William McCombs Hardy that the present suit arose.

The Bank and Mrs. Hardy were also designated as executors of the will and qualified and acted as such after the will was probated. On May 12, 1931, the widow, Corinne McCombs Hardy, attempted to show her election to take dower instead of under the will by executing a deed, in the form provided by law, in favor of the three minor children and shortly thereafter this suit was filed by R. B. McCombs, as the next friend of the children, praying that the deed be cancelled and that the widow be required to take under the will. On October 30, 1931, the Pulaski County Chancery Court rendered a decree finding that Corinne McCombs Hardy had exercised powers conferred by the will and had accepted benefits under the will that were inconsistent with the right of dower and the Chancellor therefore cancelled the deed and decreed that the widow must take under the will. She accepted said decree and has been taking under the will.

On March 30, 1932, in the same cause, the Pulaski Chancery Court accepted the resignation of the First National Bank as trustee and vested all assets, powers and responsibilities in Corinne McCombs Hardy as the surviving trustee. The Court further directed that the surviving trustee, before February 1st of each year, file a statement of account for the previous calendar year, and the Court expressly retained control of the cause for any further orders or decrees that might be necessary. Thereafter, the trustee filed annual reports describing the income and disbursements of the trust and in each instance the report was approved by the Chancery Court

the same day filed. The effect of such orders of approval is a major question on this appeal.

From time to time the trustee sold timber from certain lands that had been the property of M. W. Hardy. Prior to the year 1945 the trustee set aside one-third of the proceeds of such timber sales, invested the same and paid the income from the investment to herself individually, but held the principal as an asset of the trust. This was because Mrs. Hardy had only a life estate in said one-third interest. In 1945 the Arkansas General Assembly enacted Act 143 which provided that a widow's dower interest in timber shall be an absolute one-third of the proceeds of any sale. Acting upon the advice of her accountant, who is also an attorney, the trustee, in 1945 and 1946, took for herself absolutely the full one-third of the proceeds of such timber sales. This amounted to the sum of $6,242.82 in the year 1945 and the sum of $6,668.52 in the year 1946 making a total of $12,911.34. The trustee's annual report for the year 1945 was filed and approved on May 8, 1946, and the annual report for the year 1946 was filed and approved February 12, 1947.

On October 27, 1948, the appellant, William McCombs Hardy, filed in the same original cause the petition upon which this appeal is based. He alleged the timber transactions as above detailed and prayed that the trustee be required to restore to the trust estate that portion of the 1945 and 1946 timber sales which she had taken for herself under the authority of Act 143 of 1945 and that she continue to handle timber matters just as she had done before the 1945 Act. Appellant, plaintiff below, contended that since appellee had no dower interest that Act 143 of 1945 did not apply; that the orders approving the 1945 and 1946 reports were not final and that the trustee could not shield herself behind them without perpetrating a constructive fraud upon the beneficiaries. The appellee answered that the terms at which the reports were approved had lapsed and the orders were final and denied that constructive fraud was practiced by the trustee. The Chancellor decreed that the orders approving the reports were final; that the trustee

acted in good faith and that there was no ground for vacating and modifying the orders. From that decree there is this appeal.

In view of the high standard of behavior required of a trustee in his fiduciary capacity and in the absence of any statutory provision which might bar the action brought by appellant in this case, we are unable to agree with the decision of the Chancellor.

M. W. Hardy, during his lifetime, accumulated considerable property and it was obviously his intention in making his will to adequately provide for both his widow and his three minor children. After providing for his widow in excess of what she would have received had he died intestate, he established a trust for his children and designated his widow as one of the trustees, thereby expressing his confidence that she would faithfully apply the trust property according to his wishes. Corinne McCombs Hardy, the widow, by her acceptance of this confidence, expressed her agreement to administer the trust for the use and benefit of the children and certainly not to neglect the interest of the beneficiaries to her own personal advantage.[1] In *Hindman* v. *O'Connor,* 54 Ark. 627, 16 S. W. 1052, 13 L. R. A. 490, it was said: "As a general rule, a party occupying a relation of trust or confidence to another is, in equity, bound to abstain from doing everything which can place him in a position inconsistent with the duty or trust such relation imposes on him, or which has a tendency to interfere with the discharge of such duty."[2]

It is true that a trustee is not an insurer of the trust property and that as long as he is faithful and diligent in the execution of his duties the courts will not hold a trustee responsible for mere mistakes or errors of judg-

[1] "The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary." *American Law Institute Restatement, Trusts,* Vol. 1, § 270. See also 54 *American Jurisprudence,* § 312, p. 247.

[2] Also *Sorrels* v. *Childers,* 129 Ark. 149, 195 S. W. 1, 1 L. R. A. 1917F 430, and *Burel* v. *Baker,* 89 Ark. 168, 116 S. W. 181.

ment which result in a loss.[3]  But in the performance of duties imposed upon a trustee it is the general rule that the trustee must exercise skill, prudence and caution and that he represents and must protect the interest of all the beneficiaries and that he must act honestly and in utmost good faith.[4]  In administering the trust, the trustee must act for the beneficiaries and not for himself in antagonism to the interest of the beneficiaries; he is prohibited from using the advantage of his position to gain any benefit for himself at the expense of the beneficiaries and from placing himself in any position where his self-interest will, or may, conflict with his duties.[5] We have several times held that if a trustee violates the rights of a beneficiary by neglect or misconduct, the beneficiary may hold the trustee liable for the damage caused.[6]

As previously stated, Mrs. Hardy accepted the chancery decree and abandoned any claim she had to dower rights.  Act 143 of 1945 applies to dower and homestead interests of a widow and not to any life interest that vests in a widow under the provisions of a will and, therefore, is in no way applicable to the interest of the appellee in the estate of her deceased husband.  The taking for her own personal use of one-third of the timber sales in 1945 and 1946 was a breach of trust on the part of the trustee. Her acts in taking a part of the proceeds of the timber sales to which she was not entitled was a breach of trust even though she acted in good faith and in the belief that she was legally entitled to same under the authority of

[3] "If, therefore, a trustee has exercised the proper care and diligence, he is not responsible for mere error or mistake of judgment." *Graham Brothers Co.* v. *Galloway Woman's College*, 190 Ark. 692, 81 S. W. (2d) 837. See, also, 54 *American Jurisprudence*, § 321, p. 255, and Annotation in 3 L. R. A. (N. S.) 415.

[4] 65 *Corpus Juris*, § 519, p. 648.

[5] "Nothing in the law of fiduciary trusts is better settled than that the trustee shall not be allowed to advantage himself in dealing with the trust estate.  Lack of any fraud on the part of the trustee will not validate a transaction having the effect of making for himself a profit out of the trust estate."   54 *American Jurisprudence*, § 314, p. 249.   See, also, 151 A. L. R. 905 and 65 *Corpus Juris*, § 520, p. 652.

[6] *Clark* v. *Spanley*, 122 Ark. 366, 183 S. W. 964, and *Casteel* v. *White River Grocery Co.*, 159 Ark. 93, 251 S. W. 31.

Act 143 of 1945. A trustee is under duty to refrain from personal traffic in, or private use, application, or appropriation of trust property or funds, at least without the express consent of the *cestui que trust*.[7] There is no evidence in this case that appellant had full knowledge of the facts and certainly no concurrence upon his part in the acts of the trustee. Appellee should, therefore, be required to restore to the trust estate the funds appropriated by her unless the orders of the Chancery Court approving the accounts of the trustee for the years 1945 and 1946 are final.

The rule in Arkansas is that a judgment or final order may not be vacated or modified after the expiration of the term in which it is rendered or made except for the reasons set out in Arkansas Statutes (1947), § 29-506. However, the rule against vacating or modifying a judgment or order after expiration of the term at which it was rendered has no application to interlocutory judgments or orders and such judgments or orders may be vacated or modified at any time before the final judgment.[8] Therefore, we must determine whether the orders of the Chancery Court approving the 1945 and 1946 reports were final or merely interlocutory. In determining whether a judgment or order is final or interlocutory, there is no hard and fast definition or test applicable to all situations. The statements of account which the orders in question approved were not filed in compliance with any provision of the trust instrument or pursuant to any statutory requirement, but at the direction of the Chancery Court. The orders cannot be considered as a final determination of the rights of the parties since the trust does not terminate until the youngest of the beneficiaries reaches the age of thirty years and a judgment or order is not generally considered final where further judicial action is necessary to fully and finally determine and settle the rights of the parties.[9]

---

[7] 54 *American Jurisprudence*, § 313, p. 248.

[8] See 10 A. L. R. 559.

[9] "Any judgment or decree, which finally disposes of the issues between the parties to an action, and finally settles and adjudicates all the rights in controversy, is a final judgment." *McConnell* v. *Bourland*, 175 Ark. 253, 299 S. W. 44.

The annual accounts, which the Chancery Court directed Corinne McCombs Hardy to file, are in many ways comparable to the annual accounts which executors, administrators and guardians of minors are required to file by statute. The Arkansas Legislature has made the order of a Probate Court approving and confirming the account of an executor or administrator binding and conclusive in the absence of fraud or other recognized ground for equitable relief.[10] It is also the rule in Arkansas that the order of confirmation of a guardian's settlement by the Probate Court is a judgment which can be appealed from, but which cannot be otherwise disturbed, except in a Court of Chancery upon an allegation of fraud or other recognized ground for equitable relief.[11] However, the powers and duties of executors, administrators and guardians have long been the subject of statutory regulation and safeguards for the protection of interested parties have been provided by the Legislature.[12] While the Legislature has provided for annual settlements by personal representatives and guardians and a procedure for confirmation thereof by the Probate Court, it has not seen fit to make similar provisions in the case of trustees and therein lies the distinction.

In Arkansas there is no statute which regulates the creation of trusts and in the absence of such a statute M. W. Hardy had the right to create any trust he deemed wise and expedient as long as it was for a lawful purpose and to establish the powers and duties of the trustee he named. By the terms of his will, M. W. Hardy did create an active express trust for a lawful purpose and the powers and duties of the trustee, Mrs. Hardy, must be determined by the provisions of the instrument which created the trust. Mr. Hardy, as the creator of this trust, made provision for partial settlements between the trustee and each of the beneficiaries as they reached the ages of 21, 26 and 30 and also for a final settlement when

---

[10] See *Arkansas Statutes* (1947), § 62-1508.

[11] *France* v. *Shockey*, 92 Ark. 41, 121 S. W. 1056.

[12] As to guardians of minors see *Arkansas Statutes* (1947), § 57-301 to § 57-353, inclusive. As to accounting and settlement of executors and administrators see *Arkansas Statutes* (1947), § 62-1501 to § 62-1523, inclusive.

the youngest beneficiary reached the age of 30 years, but there was no provision for the filing of annual settlements by the trustee and nothing in the will to evidence any intention to relieve the trustee of liability to the beneficiaries prior to a final settlement. If the Chancery Court had the power to relieve the trustee from liability to the beneficiaries by its orders approving the 1945 and 1946 accounts, it must be found in the inherent power of courts of equity over trusts and not in the instrument which created the trust. In *Morris* v. *Boyd et al.,* 110 Ark. 468, 162 S. W. 60, this Court held that the jurisdiction of equity exists to control and supervise the carrying out of a trust already created and this involves a general superintending control for the purpose of enforcing the trust and preventing a failure thereof. The learned Court further said: "Chancery Courts also assume jurisdiction for the purpose of construing the terms of an instrument whereby a trust is created and to determine its scope. And in case of doubtful construction, the trustee may invoke the jurisdiction of the Court for direction in executing a trust. But the courts do not possess the prerogative power of creating trusts or of altering the terms of instruments creating them." If the Chancery Court has the power through its orders approving the reports to relieve the trustee of liability to the beneficiaries for a wrongful appropriation of trust funds then it would have the power to alter the terms of the instrument which created the trust. The Chancery Court does not possess that power. In the absence of statutory authority for the filing and confirmation of settlements of trustees, we reach the conclusion that the orders of a Chancery Court approving the accounts of a trustee, other than a final account upon termination of the trust, are interlocutory and not final unless otherwise provided in the instrument which creates the trust. The orders of the Chancellor approving the 1945 and 1946 reports of the trustee should have been modified and the trustee required to restore to the trust that portion of the proceeds of the timber sales which she had appropriated to her own use.

In view of the facts that we hold the orders approving the 1945 and 1946 accounts of the trustee to be interlocutory and not final, it is unnecessary to pass on the question of constructive fraud.

The decree of the Chancery Court is accordingly reversed and this cause is remanded for the entry of a decree in accordance with this opinion. All costs in this court and the court below are taxed against the appellee.

Justices MILLWEE, GEORGE ROSE SMITH and DUNAWAY disqualified and not participating.