HARDY *v.* HARDY.

4-9031                                                      230 S. W. 2d 11

Opinion delivered May 15, 1950.

306

*Barber, Henry & Thurman, Jacoway & Jacoway* and *Edward E. Stocker,* for appellant.

*Rose, Dobyns, Meek & House,* for appellee.

J. S. BROOKS, Special Justice. This is an action originated by the appellee (who is also the cross-appellant) against the appellant (who is also the cross-appellee) to compel appellant, as the Trustee under the Last Will and Testament of M. W. Hardy, deceased, to account to the appellee, William McCombs Hardy, a son of M. W. Hardy, and beneficiary of the Hardy Will, for certain dividends on Trust stocks, for restoration to the Trust of certain funds involved in sale of timber from lands of the Hardy estate, for permission to inspect the books and records of the Hardy Trust and finally to charge personally against the appellant, Corinne McCombs Hardy, the attorneys' fees incurred by the appellee. On hearing in the Pulaski Chancery Court in Case 82668, and hearing of another case in the same Court between the same parties, consolidated for trial, the dividends question was decided in favor of the appellee, William McCombs Hardy, but the Court refused to assess attorneys' fees against the appellant individually. Costs were assessed by the Court one-fifth to appellee and four-fifths to appellant. The other issues mentioned were disposed of by the Court below and are not before us now. The Trustee, Mrs. Hardy, has appealed the dividends question, and

William McCombs Hardy has cross appealed the attorneys' fee decision.

This is a companion case to No. 9028, decided this same day.[1] The basic facts appear in both cases and we will not elaborate on such facts. M. W. Hardy died in 1929 in Pulaski County, and left surviving him his widow, Corinne McCombs Hardy, and three minor children, the appellee, William McCombs Hardy, then age 14, and twins age 3, a son, Robert Lamar Hardy, and a daughter, Frances Hope Hardy. M. W. Hardy was testate, and his Last Will and Testament was duly probated in Pulaski County. After making provision for the widow, the bulk of the estate was left to the three children, share and share alike. A trust was set up by the Will, the general provisions of the Trust being that each child was to receive one-fourth of his inheritance at age 21, another one-fourth at age 26, and the remaining one-half at age 30.

The Hardy estate consisted of both real and personal assets—stocks, bonds, timber lands, etc. The widow, Mrs. Hardy, to whom we sometimes refer hereafter as the Trustee, was left the home in Little Rock in fee and one-third interest for life in all other real estate, together with certain personalty rights. Mrs. Hardy and the First National Bank of El Dorado were named Co-Trustees, but the Bank resigned in 1932. In that year, the Chancery Court of Pulaski County authorized Mrs. Hardy to continue as sole Trustee, and directed that she make annual reports of the Trust functions to that Court. Mrs. Hardy as such Trustee administered the affairs of the Trust from 1932 until 1947 or 1948.

William McCombs Hardy, sometimes referred to hereafter as McCombs Hardy, became 21 in 1936, 26 in 1941 and 30 in 1945, but for reasons apparently agreeable to all involved, the distributions called for by the Hardy Will at those ages were not made. Sometime in 1946, the question of a complete settlement by the Trustee with her son did come up, and this particular litigation involves one phase of the settlement. Discord between the Trus-

---

[1] See *ante*, p. 296.

tee and McCombs Hardy arose about this time, as to several matters. The phase of the Hardy Trust estate here involved arose out of the settlement of the Trustee with McCombs Hardy as to his interest in certain stocks and bonds belonging to the Trust.

After a request for the Trustee to turn over to McCombs Hardy in 1946, his share of such stocks and bonds, both parties agreed to have these items appraised by the accountant of the estate, or some person selected by the accountant, as of September 30, 1946. The procedure was to agree on an appraised value on said date, and then have the Trustee, using estate funds of the other two Hardy children, purchase the interest of McCombs Hardy in such items. The valuation basis was used, and some time after September 30, 1946, McCombs Hardy was furnished with such appraisal, as a result of which the sum of $24,049.60 would be paid to him for his interest in the stocks and bonds involved.

For different reasons, the parties did not meet to complete the transaction until January, 1947, when the contents of the appraisal were first mutually discussed. The Trustee approved the listing and the values there shown except as to the $5.00 per share figure placed on the Barton-Mansfield stock. This stock was eliminated from the list, and the amount due McCombs Hardy then reduced accordingly to $20,834.60, and check for this amount was written by the Trustee and delivered to McCombs Hardy, and cashed by him. The check, dated January 24, 1947, contained an endorsement, "On account of settlement of his share in certain personal property and cash as of September 30, 1946." One of the stocks on the list was that of the Acme Brick Company. This Company had paid a large dividend on stocks belonging to the Hardy estate in December of 1946. Such dividend and other dividends from stocks involved in the transaction between the Trustee and William McCombs Hardy paid between September 30, 1946, and January 24, 1947, amounted to $9,869.94.

Shortly after the January 24, 1947, transaction, McCombs Hardy made a demand on the Trustee for his

share, one-third, of all the dividends and he alleged that at the time of the settlement on January 24th the dividend payment question was discussed and that the Trustee agreed to pay him his share of the dividends. Mrs. Hardy denied any such agreement and claimed that the settlement made with her son as to the purchase of these stocks and bonds was effective September 30, 1946, and also asserted that the acceptance by McCombs Hardy of the above mentioned check, containing the endorsement shown, estopped her son from claiming any right to the dividends. The present litigation arose out of such controversy, together with other phases of discord between these two parties. McCombs Hardy further asserted in the Court below that because the Trustee denied him his rights and privileges due to him from the Hardy trust the Trustee should be compelled individually to pay reasonable attorneys' fees incurred by him in compelling the enforcement of his rights.

We concur with the findings of the lower Court in all phases of this case, presently before us, except as to the question of costs. As to the stock dividends point, our decision is based upon two lines of thought.

(1) The Chancellor's Findings.

This case could be effectively disposed of now upon the consideration of the question of fact presented to the Chancellor below as to the direct testimony of William McCombs Hardy that his acceptance of the January 24, 1947, check from the Trustee. was conditioned upon the agreement of the Trustee to pay to him his share of the dividends. The Trustee denied any such agreement and the disputed fact was thus presented to the Chancellor whose decision resolved the question in favor of McCombs Hardy. This being an equity suit, it is the duty of this Court to weigh the evidence and reach its own conclusion. However, the Chancellor's finding is persuasive unless the Court is satisfied that the preponderance of the evidence is to the contrary. We cannot say, in view of the record, that McCombs Hardy did not sustain the burden of proving his allegations by a preponderance of

the testimony as to the dividends question. It particularly occurs to us that as a related fact in the January 24th settlement the Trustee could not fairly assert the September 30th date binding on McCombs Hardy and yet herself partially accept and partially reject the valuation figures of the September 30th statement, as was the case when she refused to settle on the figures fixed for the value of the Barton-Mansfield stock.

(2) Purchase by Trustee.

However, in addition to the fact question above discussed, resolved against the Trustee, even if it be assumed that there was a definite valuation agreement on the September 30, 1946, date for the sale of McCombs Hardy's interest in the stock involved, still the settlement transaction of January 24, 1947, and the acceptance of the check of that date by McCombs Hardy should not be enforced by the Trustee as to the dividends point. The record in no way shows a specific agreement of the parties to have the interest of McCombs Hardy in these stocks concluded on September 30th, but only that this was a valuation basis date and that the transaction was continued over a period of almost four months before its conclusion. In the meantime, large dividends had accumulated on the stocks and the amount and extent of these dividends was known only to the Trustee who had managed completely the Hardy trust for many years. The trustee-beneficiary relationship between the parties made it incumbent on the Trustee to use the highest degree of care and fairness in her dealings with her son as to the purchase of his stock interest in the trust, no matter if the purchase was made for herself or for the other beneficiaries. This Court has previously in a number of cases defined the extent and nature of a trustee's obligations and duties in dealings with the beneficiary. In *Patterson* v. *Woodward,* 175 Ark. 300 (1925), 299 S. W. 619, we said:

"At the outset it may be said that it is a rule of universal application in equity that a trustee shall not deal with trust property to his own advantage against the consent of the *cestui que trust*. The rule is not confined

to any particular class of trustees but applies to all who come within its principles."

Also in *Lybarger* v. *Lieblong,* 186 Ark. 913, 56 S. W. 2d 760 (1933), we further said:

"Everyone whether designated agent, trustee, servant or what not, under contract or other legal obligation to represent and act for another in any particular business or line of business or for any valuable purpose, must be loyal and faithful to the interest of such other person in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to that of his principal. 'This is a rule of common sense and honesty as well as of law.' In R. C. L. 825, it is also said: 'He may not use any information that he may have acquired by reason of his employment either for the purpose of acquiring property *or doing any other act which is in opposition to his principal's interest.'*" (The emphasis is ours.)

Then in 159 Fed. 321, in a case arising in Arkansas and decided by the Circuit Court of Appeals, Eighth Circuit, styled *Byrne* v. *Jones, et al.* (1908), involving a transaction between an Arkansas attorney and a Massachusetts client, it was said:

"A trustee or an agent may purchase the trust property directly from his *cestui que trust, sui juris,* or principal, on condition that the latter intends that the former shall buy, that the former discloses to the latter, before the contract is made, every fact he has learned in his fiduciary relation which is material to the sale, that he exercises the utmost good faith, that no advantage is taken by misrepresentation, concealment of, or omission to disclose, important information gained as trustee or agent, and that the entire transaction is fair and open."

Further in the same case it was said:

"Any omission by the trustee or agent to disclose any fact material to the sale learned by him as trustee or agent, any material misrepresentation, concealment, or other disregard of this condition, renders the sale and

the contract for it voidable at the election of the *cestui que trust* or principal."

Among cases cited in support of this rule in the case quoted from are *Cornish* v. *Johns,* 74 Ark. 231, 240, 85 S. W. 764, and *Thweatt* v. *Freeman,* 73 Ark. 575, 580. 84 S. W. 720.

The well known text writer, Bogert, in his work, Trusts and Trustees, says in § 493 thereof (Breach of Fiduciary's Duty to Use Utmost Good Faith in Direct Dealing With Principal) that:

"Fiduciaries are not prohibited from having direct dealings by way of conveyance or contract with their principals, but such transactions are guarded very jealously by equity. By reason of the intimate knowledge which the fiduciary has with respect to the financial affairs of the principal, the superiority of his position, his usual influence with the principal and the latter's trust and confidence in the fiduciary, there is great opportunity for the exercise of fraud and undue influence."

The same authority in § 543 (Trustee's Duty of Loyalty to the *Cestui*) states:

"One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interest of the *cestui que trust.* He must exclude all selfish interest and also all consideration of the welfare of third persons."

Tested by the principles of the above authorities and cases, we do not find that the Trustee in her dealings with McCombs Hardy fulfilled all of her duty and obligations to the beneficiary, particularly as to a full disclosure of all facts. We think it obvious that McCombs Hardy would not have accepted the January 24, 1947, check from the Trustee if he had been given exact knowledge of the dividends accruing on the stocks, except upon a specific understanding and agreement of the Trustee for payment of his share of the dividends. The record shows that he conditioned the settlement on receipt of his share of the dividends, even though he knew nothing of the

details as to the dividends, and, no doubt, his conditional acceptance of the check would have been very definite and emphatic beyond any possible misunderstanding if the Trustee had disclosed all pertinent facts and figures about these dividends.

Our conclusion is not altered by the fact that the Trustee's dealings with her son were not on the basis of her purchase of his interest in these stocks, but that the purchase was being made for the other two Hardy children. The errors in her conduct as Trustee in dealings with her son were detrimental to McCombs Hardy, no matter who benefitted from the transaction. The cases and text writers are agreed on this point, it being said in the Re-Statement of the Law of Trusts, § 183:

"Where there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them."

The text writer in 54 Am. Juris., page 254, which is § 320, Loyalty to Plural Beneficiaries and Plural Trusts, affirms this principle. Several cases are cited by the text writer, among them, *Gaver* v. *Gaver*, 176 Md. 171, 4 A. 2d 132, in which case a mother, Mrs. Gaver, held as life tenant with the remainder interest to pass to her children equally. Mrs. Gaver was not permitted to favor one of the children in a property transfer and in that case the Court said:

"As a trustee Mrs. Gaver was under a duty to exercise her power to sell fairly and impartially for the equal benefit of all of the remaindermen and any grant of a gift, benefit or advantage to one remainderman at the expense of the others would constitute a breach of that duty, 65 C. J. 648, 26 R. C. L. 1280, 1281; *Calvert* v. *Calvert*, 18 Md. 73."

(3) Attorney's Fee.

Both parties concede that the law of Arkansas generally on this subject raised by the cross appeal of William McCombs Hardy is that each litigant must pay his own attorneys' fees. *Jacobson* v. *Poindexter*, 42 Ark. 97;

*White River L. & W. Ry. Co.* v. *Starr, R. & L. Co.*, 77 Ark. 128, 91 S. W. 14. It is true that a Trustee is responsible to the beneficiary for any damage sustained by reason of the trustee's misconduct or neglect. *Clark* v. *Spanley*, 122 Ark. 366, 183 S. W. 964. However, the record does not show in this case misconduct or neglect by Corinne McCombs Hardy to such an extent as to justify the position and claim of the cross appellant, McCombs Hardy, on this point.

Affirmed on both the direct and cross appeals with all costs assessed against the appellant, Corinne McCombs Hardy.

Justices MILLWEE, GEORGE ROSE SMITH and DUNAWAY disqualified and not participating.