HARDY v. HARDY.

5-112                                    263 S. W. 2d 690

Opinion delivered January 18, 1954.

*Rose, Meek, House, Barron* and *Nash,* for appellant.

*Frank J. Wills* and *Barber, Henry & Thurman,* for appellee.

J. Seaborn Holt, J.   M. W. Hardy died testate November 13, 1929.   He left surviving, his widow, Corinne Hardy, and three children, McCombs Hardy, born Jan-

934

uary 3, 1915, and Hope and Robert Hardy, twins, born February 6, 1926. The will named the First National Bank of El Dorado, Arkansas and Corinne Hardy, executors and trustees, and was duly probated in Pulaski County November 19, 1929. It directed the payment of all debts, gave to Mrs. Hardy the home, its contents, automobile, one-third of all personal property, "I may own at the time of my death," and one-third for life, of all his remaining realty, and that it was Mr. Hardy's purpose to give her the equivalent of what would be her dower interest in his estate in addition to the specific gifts. It directed that "the trustees and executors as soon as feasible and at any event within 2 years," set apart his wife's share and vested them with uncontrolled discretion and provided that their judgment should be final. It further provided: "The judgment of my said trustees, however, in prorating the income and profits from the main trust estate between my said children, so as to preserve equality of distribution between them shall be absolute and uncontrolled, and my trustees shall never be charged with any liability to any of my beneficiaries herein for mere errors of judgment." He also directed that the remainder of his estate go to trustees "to be held and administered for the sole use of my three children equally," and "for the gross income received or derived from the trust estate, or from the principal thereof, if the trustees deem that advisable, there shall be paid and discharged all taxes and assessments, costs, charges and expenses in the administration and protection of the trust estate, and the protection of this trust and its defense against legal or equitable attack both during and after the probate administration upon my estate including such compensation for their services as trustee as may be just, reasonable and customary."

The will further directed that the trustees deliver and vest absolutely in fee in each child at twenty-one, one-fourth of its share, at twenty-six, an undivided one-fourth, at the age of thirty, the balance, and when the youngest child reached thirty, the trust to terminate, and any unexpended balance of the special funds to be paid

to the child for whom it was set apart, with the further provision for the creation of three special trusts of $25,000 each for the education and maintenance of the three children.

The inventory and appraisement showed the following assets:

"Residence at 2400 Broadway, devised to wife___$37,640.00
Specific personalty, bequeathed to wife_____ 10,385.00

Total specific gifts to wife_____ $ 48,025.00

Undivided ⅙ int. in 64,498.02 acres of cut over
   land in Bradley County_____ 25,799.20

Undivided interests in fee or minerals of lands
   in Union County and in Louisiana, Virginia
   and Mississippi _____ 27,077.37

Undivided ½ int. in fee and royalties in lands
   in Union and Ouachita Counties._____133,643.20   186,519.77

Cash in banks and life insurance to estate_____ 91,044.98
Stocks _____332,442.85
Notes _____ 2,426.42
Other personalty _____ 9,000.00

Total personalty other than specific legacy_____ 434,914.25
                                                                   $669,459.02"

The First National Bank of El Dorado, after serving as trustee for approximately two years, resigned on March 30, 1932, and there was filed an itemized statement of the transactions of the two trustees. On the same day a decree was entered in the Pulaski Probate Court accepting the bank's resignation, approving its acts, discharged the bank as trustee and vested all assets and powers of the trust in Corinne Hardy as surviving trustee, and directed her, as trustee, to file annual reports on February 1st of each year, following her appointment as trustee.

The decree further recited that "under the powers conferred by said will, the said trustees allotted to Corinne Hardy one-third in kind as near as could be of the personal property of said estate, and an undivided

one-third for life in all the real property of said estate," in addition to specific gifts.

On October 30, 1931, it appears that a decree had been entered adjudging that Corinne Hardy take her interest in the estate, as provided in the will, after she had elected to take under the will. Following the resignation of the bank as trustee and Corinne Hardy's appointment as sole trustee, she proceeded to administer the estate.

She filed her annual reports as the law required. In none of these annual reports did Corinne Hardy make any demand or claim for any fees for services as such trustee until she filed her sixteenth annual report on February 28, 1948.

McCombs Hardy, appellant, resisted his mother's claim for fees for services, as trustee, questioned her actions in administering the estate, and after Corinne Hardy had asked the Pulaski Probate Court for instructions, the court appointed Mr. Charles B. Thweatt, a prominent local attorney, to state an account between Corinne Hardy, trustee, and her three children, beneficiaries, under the will.

The record reflects that the Master heard testimony over an extended period, made a thorough study of the applicable law and authorities, and prepared a most scholarly and comprehensive report covering more than fifty pages, which he submitted to the court.

Thereupon, after consideration of the report and other testimony, decree was rendered as follows: "Being well and sufficiently advised, the court doth approve and confirm the Master's Report except as follows:

"(a) The Master surcharged Corinne Hardy, individually, with the sum of $5,950 which was paid to Cooper Jacoway from trust funds for his services in connection with the Bradley County timber lands and the partitioning thereof. The court directs that $1,983.33 of this amount be charged to McCombs Hardy and that only $3,966.67 be surcharged against Corinne Hardy.

"(b)   The Master surcharged Corinne Hardy, individually, with $9,371.40 of the fees and expenses paid to Cooper Jacoway, exclusive of the fees paid for the Bradley County partition suit.  The court reduces the amount to be surcharged against Corinne Hardy, individually, to $7,371.40 and directs that the Trust be charged with $2,000.

"(c)   The Master found that Corinne Hardy had waived compensation for services up to and including the year 1947.  The court sets aside that finding and directs that she be allowed 5% of the gross income from the Trust, and that McCombs Hardy be charged with a proportionate share thereof.

"(d)   The Master allowed a fee of $30,000 for extraordinary services, one-third to be paid by McCombs Hardy.  The court increases the fee to the trustee for such services to $60,000, and directs that one-third be charged to McCombs Hardy.

"The trustee is directed to file an accounting as of April 10, 1951, charging McCombs Hardy with the amounts herein directed to be charged against him and surcharging Corinne Hardy with the amounts herein directed.  McCombs Hardy, Robert Hardy and Hope Hardy shall each be credited with one-third of the amount surcharged to Corinne Hardy, individually, and the account of each beneficiary shall be charged with one-third of the items directed in the Master's Report and in this Decree to be charged to the Trust.

"The Court overrules the motion filed by William McCombs Hardy to charge Corinne Hardy, individually, with a portion of the Master's fee of $7,500 and stenographic costs of $983 paid to Frances Copeland.

"Exceptions by all parties to all rulings.

"Dated 9-18-52."

Appellant, McCombs Hardy, has appealed from that part of the decree allowing Corinne Hardy $60,000 as fees for services rendered as trustee, and also contends

that the trial court erred "in reducing a surcharge against the trustee from $5,950 to $3,966.67 * * * and in reducing a surcharge of $9,371.40 to $7,371.40 * * * and in not charging Corinne Hardy, individually, with a portion of the accounting costs."

Corinne Hardy, joined by her two children, Hope and Robert, have cross-appealed, and all assert that "the Chancellor should be affirmed on direct appeal but reversed on cross-appeal with direction to surcharge the trustee's account only with her share of a reasonable fee in the Bradley County Partition suit attributable to her personal interest herein and with the further direction that she be allowed reasonable compensation based on annual income for 1948 and subsequent years and the balance due her under her husband's will."

—(1)—

We first consider the trial court's allowance of $60,000 as compensation to Corinne Hardy for services rendered the estate as trustee. She argues that for the period from 1932 through 1947, she was, under the law, entitled to 5% of the gross income from the trust, with 6% interest, but in any event that she is entitled to the above amount for services rendered in the nature of extraordinary services to the trust estate beyond the range of the ordinary duties of a trustee and which should be paid as a termination fee.

After a careful review of the record, we have reached the conclusion that Corinne Hardy, as trustee, is not entitled to any fees for services rendered on either of the above theories, which we shall consider together.

It appears practically undisputed that from the filing of her first annual report until her sixteenth annual report was filed in February, 1948, although each report showed that there was sufficient funds in her hands with which to pay fees for services,—for a period of nearly seventeen years,—she made no such claim for services. McCombs Hardy testified, that on several occasions during that period, his mother told him that she did not intend to charge any fees for services. Mrs.

Hardy did not deny her son's statement, but said she had in the background of her mind to charge for her services later. McCombs Hardy further testified, that in conducting his business and using the proceeds from his interest in the estate delivered to him by the trustee, he was relying upon his mother's promise to make no charge for her services.

Mrs. Hardy was a wealthy woman in her own right when she became trustee and was, it appears, not dependent on her interest in her husband's estate. It must be also borne in mind that she individually, and personally, had a substantial interest in the estate to protect, as well as the interests of her children. The preponderance of the testimony, as we view it, shows clearly, as found by the Master, that Corinne Hardy has waived any claim that she might have asserted to fees for services up to 1947. The Master's report recites: "A settlement of personal property was made with McCombs on January 24, 1947. It was complete with the exception of certain specific items which were to be later divided. No fee for the trustee was charged or mentioned at the time of the settlement. It is my opinion that the trustee has waived her right to compensation based on a percent of annual income for services prior to 1947."

The evidence further reflects that McCombs Hardy married in 1946, over the violent objections of his mother, and thereafter, she refused to allow him to bring his wife into her home and McCombs refused to go to his mother's home without his wife. It appears that there was no apparent reason for Mrs. Hardy's objection to the marriage. There is not a syllable of evidence of criticism against this young woman whom McCombs chose for his wife. However, it appears that from the date of McComb's marriage, his mother assumed an antagonistic and unnatural attitude toward him, wholly without cause, and thereafter, she proceeded to deal with her own son at arms' length, as she would a stranger. She refused to deliver to him his interests in the estate which were due him under the clear and unambiguous directions con-

tained in the will, and on two occasions, he was forced to go to the expense and worry of bringing suits to enforce his obvious rights. *Hardy* v. *Hardy,* 217 Ark. 296, 230 S. W. 2d 6, and *Hardy* v. *Hardy,* 217 Ark. 305, 230 S. W. 2d 11.

The duties of a trustee have been many times announced in our decisions. The text writer in 54 Am. Jur. 246, *et seq.,* announced some of the general rules as to the duties of trustees in this language: ''A trustee must act in good faith in the administration of the trust, and this requirement means that he must act honestly and with finest and undivided loyalty to the trust, not merely with that standard of honor required of men dealing at arm's length in the workaday world, but with a punctilio of honor the most sensitive. \* \* \*

''A trustee in his administration of the trust is under the duty of acting exclusively and solely in the interest of the trust estate or the beneficiaries. \* \* \* He may not without breach of duty take part in any transaction concerning the trust, where he has an interest in such transaction adverse to that of the beneficiary. \* \* \*

''A trustee is at all times disabled from obtaining any personal benefit, advantage, gain, or profit out of his administration of the trust. \* \* \* Any benefit or profit obtained by the trustee inures to the trust estate, even though no injury was intended and none was in fact done to the trust estate,'' and in the recent case of *Hardy* v. *Hardy,* 217 Ark. 296, 230 S. W. 2d 6, we said:

'' 'As a general rule, a party occupying a relation of trust or confidence to another is, in equity, bound to abstain from doing everything which can place him in a position inconsistent with the duty or trust such relation imposes on him, or which has a tendency to interfere with the discharge of such duty.' \* \* \*

''In the performance of duties imposed upon a trustee it is the general rule that the trustee must exercise skill, prudence and caution and that he represents and

must protect the interest of all the beneficiaries and that he must act honestly and in utmost good faith. In administering the trust, the trustee must act for the beneficiaries and not for himself in antagonism to the interest of the beneficiaries; he is prohibited from using the advantage of his position to gain any benefit for himself at the expense of the beneficiaries and from placing himself in any position where his self-interest will, or may, conflict with his duties.  *  *  *

" 'The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.' "

In the case of *Cook, et al.* v. *Stockwell, et al.,* 206 N. Y. 481, 100 N. E. 131, in which similar facts were involved, as here, where it appeared that the trustees had paid to the beneficiary the full net income of the trust fund without deducting any commission, that court said: "These facts warrant the conclusion that the trustees intended to waive any claim to commissions on the income. The statute allows commissions to executors and trustees; but they may waive them, if they wish, and, if there be any evidence of a waiver, their legal representatives are in no position to dispute it. The case falls, plainly, within our recent decision in *Olcott* v. *Baldwin,* 190 N. Y. 99, 109, 82 N. E. 748; where the trustees for eighteen years paid to the beneficiary the full net income of the funds, without deducting their commissions."

The rule is stated in Scott on Trusts, Vol. 2, p. 1396, § 242.8, in this language: "If the trustee pays income to the beneficiaries who are entitled to income and does not deduct the compensation to which he is entitled, evidencing an intention to make no claim to such compensation, he cannot thereafter require the beneficiaries to pay him such compensation, nor is he entitled to such compensation out of income subsequently accruing."

As to extraordinary services,—in effect, services beyond the line of the ordinary duties of a trustee,— compensation for such extraordinary services "will be allowed a trustee for services in the administration of

the trust of a character not usually rendered by trustees; for example, a trustee who is also a lawyer may be allowed compensation for necessary services of a professional character rendered for the trust estate." 54 Am. Jur., § 532, page 420.

We think the preponderance of the testimony shows that Corinne Hardy rendered no services in handling this trust,—in which, as indicated, she was individually and personally interested,—which did not fall within the classification of an ordinary trustee.

Briefly, she collected and distributed income, invested surplus funds and securities, and held timber lands that had been turned over to her as assets of the trust, which appear to have materially increased in value through the years. While it is true that on occasions she loaned money to the trust (again protecting her own interest as well as that of her children's trust) but this money was repaid to her, so we are unable to find anything that she did that she was not required to do under the will, and as trustee. "A trustee may reasonably be allowed compensation for any specific service, not included in the ordinary range of a trustee's duties and not covered by the commissions awarded, even though he had agreed to render the ordinary services of a trustee gratuitously; but the rule allowing compensation for extraordinary services does not apply to services which the trustee is required by will to perform as one of the ordinary duties in the trust management," 65 C. J., § 813, p. 915, and in Restatement of the Law of Trusts, ch. 7, § 242, p. 742, the text writer says:

"d. Extra Services. In the absence of a statute providing a definite rule fixing the amount of the trustee's compensation, a trustee who renders professional or other services not usually rendered by trustees in the administration of the trust, as for example services as attorney or as real estate agent, may be awarded extra compensation for such services. In fixing the amount of such compensation the court will allow an amount which under all the circumstances it considers to represent the fair value of the services."

While, as indicated, the timber lands which the trustee continued to hold through the years have substantially increased in value, we do not think Mrs. Hardy has shown such foresight and skill in holding this land intact that would warrant extraordinary compensation. She was doing only her plain and ordinary duty as trustee, as we see it.

In the case of *In re Brannan's Estate,* 215 Pa. 272, 64 A. 537, the court said: "Real estate owned by the decedent was a single property which the trustees sold for $80,000. Upon this gross sum in addition to the commission of 2½ per cent. which was allowed by the auditing judge, the accountants claimed as compensation $6,242.40. The basis of this claim was the increase in value of the property above its assessment at the death of the testator. This increase, however, was only a reflex of the natural growth of the city values during the period covered by the trust. The trustees were enabled by these conditions to lease advantageously and afterwards to sell the real estate, but the foresight and skill displayed in the transaction were not of a character to demand an extraordinary recompense, and were fairly measured by the auditing judge."

In Bogert Trusts-Trustees, Vol. 4, Part 2, p. 386, § 976, ch. 46, we find this language: "Allowances of extra compensation, over and above the statutory rate or the amount usually granted by the court in the exercise of the discretion, are discouraged, and should never be given for the performance of the ordinary duties of a trustee."

—(2)—

The record discloses that Corinne Hardy paid Cooper Jacoway $23,393.94 attorney's fees. Of this amount, the item of $5,950 was dealt with by the trial court in paragraph (a) of the above decree and the item of $9,371.40 was dealt with in paragraph (b) of the decree. As indicated, the Master, after most careful consideration, had surcharged Corinne Hardy, individually, with these two items (aggregating $15,321.40) and we

think on the record he was warranted in so doing. We hold that the trial court erred in disturbing the Master's report and findings as to these two items and that no part thereof should be charged to McCombs Hardy. It appears, as pointed out by the Master, that Corinne Hardy had an undivided interest in the Bradley County lands of 36.77% and a one-third interest for life in all of the other lands. These interests were clearly outside of the trust. The Master found that she had litigated the two cases (above referred to) to this court. She was required to pay costs in these cases, which she charged to trust funds. We hold, as indicated, that the Master's findings and report should not be disturbed.

There was no error in the decree charging the Master's fee of $7,500 and stenographic costs of $983.00 to the trust, and the court's refusal to charge these two items to Corinne Hardy, individually.

The decree is reversed on direct appeal and affirmed on cross-appeal.

ED. F. McFADDIN, Justice (dissenting in part). The majority opinion says: "The record reflects that the master heard testimony over an extended period, made a thorough study of the applicable law and authorities, and prepared a most scholarly and comprehensive report covering more than fifty pages, which he submitted to the Court."

I thoroughly agree with the above quoted statement; and I believe that the master's report was correct and the Chancery Court should have approved it in every detail.

Therefore, my conclusion is to reverse so much of the Chancery decree as failed to follow the master's report, and to reinstate the master's report *in toto*.